THE LARIMER AND WELD IRRIGATION COMPANY ET AL.
v. WYATT ET AL.

1. WATER RIGHT CONTRACT CONSTRUED.

In contracts between a ditch company and consumers of water under the ditch it was provided that the company should turn the canal over to the water right owners when the number of water rights sold and in force should "equal the estimated capacity of the company's canal to furnish water." *Held*, that the clause "estimated capacity of the company's canal to furnish water" did not mean alone the physical capacity of the canal to convey water, but the capacity of the canal and the stream from which the water was taken *to furnish water* during the season of irrigation. *Wyatt v. Irrigation Co.*, 18 Colo. 298, followed.

2. STATUTORY ADJUDICATION—CONDITIONAL DECREE.

It seems that a conditional decree is not authorized in a statutory proceeding for an adjudication of priorities of right to the use of water for irrigation.

3. WATER RIGHTS—PRORATING STATUTE.

The most favorable view that can be taken of the prorating act of 1879 is that in times of scarcity of water it may be invoked to compel the prorating of water among consumers having priorities of the same, or nearly the same, date. It cannot be so construed as to interfere with the constitutional rights of prior appropriators.

4. SAME.

The fact that consumers of water have been allowed to take more water from a ditch than they were entitled to take will not prevent them from maintaining their right to so much as they are in fact entitled.

5. SAME.

In the circumstances of the case, certain water rights should have been awarded to one of the defendants, and he should have been allowed to take the excess water, if any, remaining after the preferred rights of other holders have been supplied.

*Appeal from the District Court of Weld County.*

THIS is a contest between water right claimants taking their supply from a common source and by means of the same ditch. It is before the court for the second time. At the first hearing a demurrer was sustained to the complaint and judgment entered thereon by the district court. From

this judgment the cause was taken to the court of appeals, and from that court into this court, and the complaint was held sufficient and the judgment of the lower court reversed. See *Wyatt v. Irrigation Co.*, 18 Colo. 298. Upon the former appeal the cause was determined upon the construction of certain contracts between the ditch company and the consumers of water, wherein it is provided, among other things, that the company was to turn this canal over to the water right owners when the number of water rights sold and in force should equal the " estimated capacity of the company's canal to furnish water." The principal controversy upon the former appeal arose with reference to the proper construction of the words " estimated capacity to furnish water." As a result of that controversy it was determined that this clause did not mean alone the physical capacity of the ditch to convey water, but the capacity of the ditch and stream from which the water was taken *to furnish water* during the season of irrigation. After the cause was remanded to the district court, an order was made for a temporary writ of injunction, as follows :

" It is ordered by the court that * * * a preliminary injunction issue from the office of the clerk of this court whereby the said defendants and their and each of their officers, agents, managers, attorneys and employés, and each and every of them, until otherwise ordered by the court, shall be commanded absolutely to desist and refrain from prorating among other than the 336 3/4 80-acre water rights in the canal of the defendant, The Larimer and Weld Irrigation Company, outstanding and recognized when the complaint in this case was filed, as stated therein, after supplying the 29 3/4 preferred water rights mentioned in the complaint near the upper portion of said canal, any such waters flowing or to flow in said canal as may be obtained by defendant, The Larimer and Weld Irrigation Company, from the river headgate of its canal and from any other source of supply for the purpose of general distribution among its water right owners, during all such times in irri-

gation seasons when there is no more than sufficient water to furnish 1.44 cubic feet of water per second, flowing over weirs at the lateral headgates along the line of said canal to each of said 336 3/4 80-acre water rights; and absolutely to refrain and desist at all times during the irrigation season from furnishing to the owners of any other and additional water rights any of such waters as above defined except the surplus over and above a full supply of 1.44 cubic feet per second per water right to each of said recognized water rights; and commanding defendant, The Larimer and Weld Irrigation Company, its superintendent, officers, agents, attorneys and employés and each and every of them, during irrigation season to prorate all of said waters flowing and to flow in said canal, derived from the sources aforesaid, but not otherwise, among said 336 3/4 water rights, so that the owner of each water right shall receive his *pro rata* share thereof exclusive of such surplus, if any at any time there be; and further commanding said defendant, The Larimer and Weld Irrigation Company, during the irrigation season, to keep posted on all, each and every of the lateral headgates along the line of said canal, at which water is distributed from said canal into the laterals thereof, a written notice correctly stating each day the number of 80-acre water rights which are then receiving water at such lateral headgates and the amount of water which is being delivered at such headgate to each of said 80-acre water rights for said day. The amount of water stated in such notices may be expressed in inches, according to a custom which has heretofore prevailed, it appearing to the court that a full water right of 1.44 cubic feet per second consists of fifty-three inches, upon the system of measurements prevailing in said canal."

Thereafter the defendants, The Larimer and Weld Irrigation Company and Benjamin H. Eaton, filed a joint answer. In this answer certain allegations of the complaint with reference to the organization of the defendant company, etc., are admitted. Nearly all the other allegations are denied.

In addition to this, the answer contains an alleged history of the entire transaction, giving the date and size of the original canal and the several subsequent enlargements of the same, with the times at which water was appropriated, and set up a certain decree of the district court entered in 1892, adjudicating priorities to this and other canals. The answer also contains the water right contracts in full, under which plaintiffs claim. The new matters set up in the answer are denied in the replication, and upon the issues thus made the cause was tried to the court without a jury. As a result of an extended trial, during which much oral and documentary evidence was introduced, the court made the following findings of fact:

. " This cause having come on duly for trial at this November term, A. D. 1893, of said court, upon the pleadings and evidence offered, both on behalf of the plaintiffs and of the defendants, and have been argued by counsel, and the court being now sufficiently advised in the premises, the court doth find the issues herein joined in favor of the plaintiffs, and particularly doth find:

"*First :* That the owners of the water rights in the Larimer and Weld canal of defendant, The Larimer and Weld Irrigation Company, recognized as outstanding at and prior to the time when the complaint in this action was filed, as set forth in the complaint, to-wit: 366 1/2 water rights, and said water rights only, are entitled to receive all water flowing and to flow in the canal of defendant, The Larimer and Weld Irrigation Company, by virtue of the appropriations made by means of said company, at all times when there is not sufficient water flowing in said canal, by virtue of the appropriations made by its means from the Cache la Poudre river, to supply 1.44 cubic feet per second per water right at lateral headgates along the line thereof.

"*Second :* That the plaintiffs and other water right owners deriving their water supply for irrigation from said canal, pursuant to the terms and stipulations of the contracts, the form of which is set forth in the pleadings herein, said water

rights aggregating, as shown by the pleadings and proof herein, 336 3/4 eighty-acre water rights, are entitled now to receive stock of defendant, The Larimer and Weld Irrigation Company, in the ratio of four shares of said stock for each eighty-acre water right by them or any of them respectively held; further, that of the 29 3/4 preferred water rights in said complaint mentioned, stock shall be transferred to and be held by those owners thereof only severally, whose contracts with said Irrigation Company evidencing their ownership of said water rights provide for the issuance of stock on the ratio aforesaid.

"That all the capital stock of said corporation is subject to a trust in favor of said water right owners and to be transferred to them; further, that all the surplus stock now in the hands of said Eaton not needed to supply the owners of water rights on the ratio of four shares to each eighty-acre water right, should be retired or transferred to defendant, The Larimer and Weld Irrigation Company, as treasury stock, and not entitled to representation at any stockholders' meeting of said corporation.

" *Third:* That all contracts for the delivery of water, from the canal of defendant, The Larimer and Weld Irrigation Company, executed or entered into since the filing of the complaint in this action on the 13th day of September, 1890, by which said defendant has assumed to recognize more than 366 1/2 prorating water rights mentioned in complaint, and all such contracts providing directly or indirectly for any control in said canal, and all deeds purporting to dispose of prorating water rights in excess of the 366 1/2 water rights in complaint mentioned, were made without authority of law, in violation of the rights of the plaintiffs and other water right users in said canal, and the plaintiffs are entitled to have the same cancelled, set aside and held for naught.

" *Fourth:* That plaintiffs are entitled to a decree herein making perpetual the temporary injunction heretofore issued herein and also to an injunction requiring the defendant Eaton to transfer the stock as above stated, and an injunction

to restrain defendant, The Larimer and Weld Irrigation Company, from granting any rights or privileges to the carriage of water in said canal, or any privileges concerning use or control of said canal, except the privileges in these findings mentioned, until a board of directors of said company is duly elected at a stockholders' meeting of stockholders holding stock on the basis and on the ratio in the above finding set forth, and said directors enter on the discharge of their duties.

" Whereupon, it is ordered, adjudged and decreed by the court:

"*First:* That the temporary injunction heretofore rendered herein be and the same is hereby made perpetual.

"*Second:* That any and all deeds and contracts made by defendant, The Larimer and Weld Irrigation Company, since the filing of the complaint herein, or at any time, whereby any prorating water right privileges in said canal have been assumed to be granted, except the 366 1/2 water rights in complaint set forth, be and the same are hereby cancelled, set aside and declared to be null and void.

"*Third:* That the defendants and each of them, their agents, officers and attorneys, be and they are hereby enjoined and commanded to cause to be cancelled all certificates of stock now outstanding in defendant, The Larimer and Weld Irrigation Company, and said defendant, The Larimer and Weld Irrigation Company, its officers and agents, be and they are hereby enjoined and commanded to issue new certificates of capital stock with all convenient speed to the legal holders of each of the 366 1/2 water rights in complaint mentioned, whose contracts with said company entitle them to receive stock as aforesaid on the ratio of four shares of said stock to each eighty-acre water right, said certificates to be issued to the holders of said water rights on application made by said legal holders severally, or in their behalf accompanied by proper evidence that the person or persons in whose name or names said stock is requested to be issued is or are holder or holders of the legal title to any of the 366 1/2

water rights, whose contracts call for issuance of stock as aforesaid, and said defendant, its officers and agents are hereby enjoined and commanded not to issue stock to other persons and not to reissue any other stock, but to retain the same in its treasury, and the said defendant, its officers and agents are hereby commanded and enjoined absolutely to desist from encumbering said canal and from entering into any new contracts or obligations concerning water privileges in or the management or operation of said canal until a new board of directors are elected at a stockholders' meeting by stockholders to whom stock shall be issued as provided for by this decree.

" *Fourth :* It is further ordered and decreed by the court, that the present directors of defendant, The Larimer and Weld Irrigation Company, who are not water right owners in said canal, if any there be, may continue to hold each one share of the stock of said corporation until the next annual stockholders' meeting thereof, to the end that they may continue to act as directors of said corporation for purposes in this decree mentioned, but that said stock not representing water right ownership shall be retired, and the certificates therefor cancelled at the time of said stockholders' meeting.

" *Fifth:* This decree is not intended in any manner to adjudicate or affect any rights claimed by defendant Eaton to any water claimed to be flowing or to flow in said ditch over and above the amount necessary to supply 1.44 cubic feet per second to each of the 366 1/2 water rights above mentioned, but such matter is left to be hereafter determined as the rights of the respective parties may appear.

" *Sixth:* It is further ordered that the costs of this case be taxed to defendants as follows :

" One half to defendant B. H. Eaton.

" One half to defendant, The Larimer and Weld Irrigation Company, and that plaintiffs have execution therefor."

Mr. J. W. McCreery and Mr. C. D. Todd, for appellants.

Mr. H. N. HAYNES, for appellees.

CHIEF JUSTICE HAYT delivered the opinion of the court.

It is contended by appellants that the construction placed by this court upon the clause "estimated capacity to furnish water," as used in these water contracts, should be modified by reason of the facts set forth in the answer and the evidence introduced upon the trial.   Upon a review of the former opinion in connection with the evidence in the case, we are confirmed in the correctness of the construction then placed upon this clause of the contract.   We find nothing in the contracts introduced in evidence in any way qualifying or modifying this clause.   In fact, every material part of the contract bearing upon the question is set forth in the complaint, and was before the court upon the former review.

The construction of the contract by which the "estimated capacity to furnish water" is held to have reference to the water supply as well as to the physical capacity of the ditch, is the only construction, we think, of which the written instrument will permit.   But if we go beyond the written instrument, the proofs leave no doubt but that this construction is in harmony with that given the contracts by the officers of the company from the inception of the enterprise until shortly before the institution of this suit.   The record is full of expressions by the parties in interest which cannot be satisfactorily explained upon any other hypothesis than the one we have stated.   But, admitting that the evidence is contradictory in this respect, we have the findings of the trial court in favor of appellees' contention; so that whether we look at these contracts from the written instruments themselves, upon the proofs offered, or view them alone in the light of the findings of the district court, the result must be in each instance against the contention of appellants.

It is claimed, however, that the findings of the district court are incomplete.   If this be true, it is a matter which should have been called to the attention of that court at

the trial. The code provides how a finding may be required upon any matter in controversy in an equity case; and if appellants desired more specific findings they should have availed themselves of the statutory method.

A large amount of evidence was introduced for the purpose of showing the physical capacity of appellants' ditch. There is a sharp conflict between the witnesses for plaintiffs and the defendants, with reference to such physical capacity. A careful examination of such evidence inclines us to the opinion that by reason of enlargements the ditch has been made capable of carrying 720 cubic feet of water per second of time—sufficient to provide a supply for all the water rights claimed by plaintiffs and defendants, if a sufficient supply could be obtained from the Cache la Poudre river, this being the source of supply for this and many other ditches used to convey water for the purpose of irrigation. But we are satisfied that during a greater portion of the irrigation season the capacity of the ditch to furnish water is not sufficient to fully supply even those given preferred rights to water from this ditch by the district court.

Among other defenses interposed is the following:

"That in the district court of Larimer county, state of Colorado, on the 11th day of April, 1882, a decree was made and entered in the matter of the adjudication of priorities in water district No. 3, division No. 1, awarding to The Larimer and Weld Irrigation Company a decree of priority for 719.99 cubic feet of water per second of time, as follows, that is to say:

"By original construction, June 1st, 1864, 3 cubic feet;

"By first enlargement, April 1st, 1867, 16.66 cubic feet;

"By second enlargement, September 20th, 1871, 75 cubic feet;

"By third enlargement, January 15th, 1875, 54.33 cubic feet;

"By fourth enlargement, September, 1878, 571 cubic feet.

"Total,   .   .   .   .   .   .   .   .   .   .   .   719.99 cu. ft.

" That said decree has not been modified, set aside or reversed; that the same remains in full force and effect.

" Defendants therefore say : That the appropriation of said ditch, and the supply of water awarded thereto is 719.99 cubic feet per second of time ; that the plaintiffs are, by the terms of their contract, above set forth, and the provisions of the statute in that behalf, required to prorate the water at any time, flowing in said ditch, to the extent of 500 water rights, and each water right is entitled to but one five hundredth part of said appropriation.

" Wherefore, defendants say : That the matters and things set forth in plaintiffs' complaint, and the injuries alleged and relief sought, are *res adjudicata*, and plaintiffs ought not to be further permitted to prosecute their alleged cause of action."

It is now contended that the decree in the case at bar is in conflict with the former decree rendered in the adjudication of priorities between defendants' ditch and other ditches in that water district, as set forth in the foregoing plea. In answer to this contention of counsel, it is to be said that the former decree, (which was introduced in evidence in this case), by its express terms is limited to the canal itself, and expressly excludes its operation so as to in any manner affect the rights of the various users of water from this canal, as between themselves. Further than this, in so far as the fourth enlargement of the canal is concerned, it is subject to the following proviso, which is made a part of the same decree which purports to give such appropriation :

" And, further, as to said appropriation by fourth enlargement—priority No. 79—in said findings and herein above mentioned, it having been found in manner and form aforesaid, that said fourth enlargement of said ditch No. 9 has been in fact made commencing on the month of September, A. D. 1878, by means of which said ditch is actually enlarged to a carrying capacity of 43,200 (forty-three thousand two hundred) cubic feet of water per minute of time, the same having been made at great expense and in good faith, for use for said purpose of irrigation, without the fact that actual appro-

priation by use of water had been made of the increased
quantity intended to be carried by means of said fourth en-
largement; it is further adjudged and decreed that nothing
in said findings or in the decree contained shall prejudice the
right of said claimant or other party or parties interested in
said ditch or in appropriations of water from said river, by
means thereof, in or concerning said fourth enlargement, if
the said appropriation of water intended to be made thereby
has been or shall be in fact made, or any part thereof, with
due diligence according to the nature of the work of said
enlargement, within a reasonable time from the commence-
ment thereof, and said priority shall stand as No. 79, to cover
any such actual appropriation so made or to be made until
further order and judgment of this court in that behalf, with
leave to said claimants or other parties interested as aforesaid,
to apply at any time within one year from the entering of
this decree for an order upon reasonable notice to all claimants
of appropriations by priorities herein adjudged to be junior
and subsequent to said priority by fourth enlargement of said
ditch No. 9, to-wit: priority No. 69—as shown by said findings
and this decree—for hearing proof of said fourth enlargement
of said ditch on such terms as the court may then order in
that behalf; and this said application may be made as to any
reservoir or reservoirs connected with the ditch of said claim-
ants as mentioned in the findings of the referee herein."

This decree was rendered soon after the passage of the act
with reference to the adjudication of priorities to the use of
water and at a time when the act was not as well understood
as at present. It was entered nearly four years after the
fourth enlargement of plaintiffs' ditch was made, and after
the lapse of ample time to complete the appropriation. It is
doubtful if any court could now be induced to enter such a
conditional decree.

It would be unwise, we think, to enter into a detailed dis-
cussion of the effect of this decree, as it is only collaterally
involved in this proceeding, and in reality has no bearing upon
the controversy now before the court, which is a contest

between users of water taking their supply from the same ditch, and it does not attempt to define the capacity of the stream to furnish water.

It is also claimed that the decree is in violation of the prorating statute of 1879.   We do not so consider it.   It is admitted in this case that this ditch is entitled to priorities as of date of the original construction, and by reason of its several enlargements.   These priorities are protected by the constitution, and cannot be interfered with by legislative action. The most favorable view that can be taken of the statute is that in times of scarcity of water it may be resorted to to compel the prorating of water among consumers having priorities of the same, or nearly the same, date.   *Farmers' High Line Canal & Reservoir Co. v. Southworth*, 13 Colo. 111.   In the case at bar, however, the contracts provide for prorating water in times of scarcity and are binding between the parties.

We attach no importance to the evidence introduced to show that plaintiffs at times used more water than they were entitled to use.   It seems that the headgates of the laterals were not of uniform construction, and for this reason it was difficult to properly apportion the water.   This was, however, under the control of the defendant company, and regulated by its employés.   Ditch riders were employed by it to see that the water was properly distributed.   But even if plaintiffs were proven to have taken more water than they were entitled to take, we know of no principle by which this would prevent them from maintaining their right to the water to which they are in fact entitled.

A careful examination of the evidence convinces us that the decree of the court below is right, and should be affirmed as to the 366 1/2 prorating water rights designated.   We think the only just ground of complaint by appellants is with reference to the failure of the district court to fully adjudicate the rights of defendant Eaton.   We think, under the pleadings and evidence, that this defendant should have been awarded the 133 1/2 water rights claimed by him, but sub-

ject at all times to the prior right of plaintiffs to the 366 1/2 water rights held by them.

This will give no right to the holder of such additional water rights to participate by reason thereof in the distribution of shares of stock in the company, as provided in the written contracts and by the decree, or in the management of the canal; but when the property is transferred to plaintiffs, it should be upon condition that the holders of such additional water rights be allowed to take the excess water, if any, remaining after the preferred rights are supplied upon such reasonable terms for the maintenance of the canal as the court may fix.

With the exception of this modification, the decree will in all things be affirmed. The parties will, however, be permitted to apply to the district court to fix the terms upon which such additional water rights may be enjoyed, and for such purpose the cause will be remanded; costs in this court not to be recovered.

*Affirmed.*