[No. 4204.]

BLAKELY v. THE FORT LYON CANAL COMPANY.

[No. 4252.]

THE PUBLIC GUARANTY SAVINGS BANK v. THE FORT LYON CANAL COMPANY.

1.  **Water Rights—Corporations—Conveyances—Sales in Excess of Capacity of Canal—Return of Purchase Price—Estoppel.**
    An irrigation canal company issued deeds to water rights which provided that when the estimated capacity of the canal had been disposed of the title to the canal should vest in the purchasers of water rights, and the obligations of the vendor company to keep the canal in repair and to supply water through it to the purchasers of water rights should cease. The deeds also

provided for the organization of a new company to take title
to the canal for the benefit of the purchasers of water rights.
The canal company sold water rights in excess of the estimated
capacity of the canal. Held, that when the company disposed of
the estimated capacity of the canal the title to the canal vested
in the purchasers of water rights as vendees and not as suc-
cessors of the selling companies. And that the new company
organized to take title for their benefit did not assume any of the
obligations of the old company to the purchasers of the excess
water rights, and that in an action by the new company to cancel
the deeds for water rights issued by the old company after the
estimated capacity of the canal had been disposed of, plaintiff
was not required to return or offer to return the consideration
paid for such excess water rights. Nor is plaintiff estopped to
assert that the company selling the excess rights had no author-
ity to make such sales.

2. **Water Rights—Contracts—Vesting Title of Canal in Owners
of Water Rights.**

Where a canal company sold water rights and issued deeds
providing that when the estimated capacity of the canal was dis-
posed of.the title to the canal should vest in the owners of water
rights, when the company sold water rights equal to the capacity
of the ditch the company had nothing further to sell and the
purchasers of water rights in excess of the capacity of the canal
took nothing by their purchase. The title to the canal vested in
the owners of water rights who purchased before the capacity of
the ditch was disposed of and they assumed no obligations of
the company other than those mentioned in their deeds, and a
new company organized to control the canal in their interest
assumed no further obligations than did the water rights owners.
And where the obligations assumed in the deeds of purchase of
water rights were limited to the maintenance and control of
the system after its ownership was vested in a company repre-
senting them, the new company was not bound by the executed
contracts of the old company for water rights in excess of the
capacity of the canal.

3. **Same—Estoppel—Laches—Pleading.**

Where a canal company sold water rights by deeds which
provided that when the estimated capacity of the canal was dis-
posed of the title to the canal should vest in the owners of water
rights, and the company sold water rights in excess of the ca-
pacity of the canal, in an action by a new company organized to
control the canal in the interest of the water right owners to
cancel the deeds of the old company for the excess water rights,

15

a defense that plaintiff is estopped to cancel such deeds because of the laches of the water rights owners in permitting the vendor company to remain in control of the canal after they became its equitable owners, and during which time the excess deeds were executed, cannot be raised by demurrer to the complaint but should be presented by answer so the plaintiff may have an opportunity to explain away such laches.

4. **Water Rights—Conveyances—Notice.**

Purchasers of water rights under deeds providing that when the estimated capacity of the vendor's canal was disposed of the title to the canal should vest in owners of water rights, were put upon enquiry relative to previous sales, and where such enquiry prosecuted with reasonable diligence would have developed the fact that the capacity of the canal had been disposed of, they are charged with notice of such fact.

5. **Pleading—Parties—Special Demurrers.**

The code provision relative to special demurrers on the ground of defect of parties contemplates those without whom no decree in the cause can be rendered. Where a canal company sold water rights by deeds which provided that when the capacity of the canal was disposed of the title to the canal should vest in the owners of water rights, in an action by such owners to cancel deeds for water rights made by said canal company in excess of the capacity of the canal where no relief is asked against the vendor company the company is not a necessary party and the question of defect of parties cannot be raised by special demurrer.

6. **Water Rights—Capacity of Canal—Evidence.**

The estimated capacity of an irrigation canal means the ability of the canal to supply or deliver water, and in determining this question there must be taken into consideration not only the physical capacity of the canal, but the volume of its decreed priorities in connection with the probability of obtaining water from the stream supplying them under normal conditions during the irrigation season.

7. **Water Rights—Conveyances.**

Where a canal company sold water rights under deeds which provided that when the estimated capacity of the canal was disposed of the title of the canal should vest in the owners of water rights, and after the company had sold water rights up to the capacity of the canal it was succeeded by another company, which continued to sell water rights in excess of the capacity of the canal, the fact that deeds issued by the succeeding company to the excess water rights did not limit the authority of the com-

pany to sell to the estimated capacity of the canal cannot avail the claimants under such excess deeds, since the prior company having exhausted the capacity of the canal, the succeeding company acquired no additional rights and had nothing to sell.

**8.  Evidence.**

Where a witness was asked how a certain fund had been applied, to which question an objection was sustained, the question was not sufficient to indicate what the witness's answer would be, and it will not be assumed that the witness would have answered, had he been permitted, that the fund was applied as claimed.

**9.  Water Rights—Conveyances in Excess of Capacity of Canal— Return of Purchase Price—Estoppel.**

Where a canal company sold water rights under contracts which provided that when the estimated capacity of the canal was disposed of the title should vest in the water rights owners, in an action by a new company organized to take title and control the canal in the interest of the owners of water rights to cancel deeds made by the vendor company for water rights in excess of the capacity of the canal, the fact that the vendor company may have used the money received for such excess water rights to improve the canal does not entitle such purchasers of excess water rights to have the purchase price refunded, neither is the plaintiff estopped to question the validity of such excess water rights because the money was expended upon the canal with the knowledge of the water rights owners.

**10.  Limitation—Pleading.**

The defense of the statute of limitation is affirmative and must be specially pleaded, and a plea based on one section of the statute will not admit the defense of a different statute.

**11.  Water Rights—Corporations—Estoppel.**

Where water rights owners who purchased under a contract providing that when the estimated capacity of the canal was disposed of the title to the canal should vest in the owners of water rights, organized a corporation to take title and control the canal for their benefit, and at the time of the organization adopted a resolution to the effect that each owner of such water rights should be a holder of the capital stock of the company and articles of incorporation were adopted accordingly, the new corporation was not thereby estopped to maintain an action to cancel deeds for water rights issued by the old company in excess of the estimated capacity of the canal. It will be assumed that the resolution and charter contemplated that only actual

and legal owners of water rights were to become stockholders in the corporation.

### 12. Res Judicata—Water Rights—Judgments.

An order of court turning over an irrigation canal to a new company for the benefit of the owners of water rights is not res judicata as to who are such owners, but should be construed to mean that the company is given possession of the property as the trustee of those who are the legal owners of water rights.

### 13. Corporations—Authority to Maintain Action.

Where a corporation was organized to take title to and control of an irrigation canal for the benefit of the owners of water rights who had purchased under a contract providing that when the estimated capacity of the canal was disposed of the title should vest in such owners, and the directors of the corporation adopted a resolution authorizing suit to be brought against holders of water rights who had not beneficially applied the same in good faith to irrigation purposes, and where assessments had not been paid and which also provided that the board had under consideration the practicability of relieving the canal from water rights issued in excess of its estimated capacity and that this matter was left to their action, the resolution was sufficient to authorize the maintenance of a suit to cancel such excess water rights.

### 14. Water Rights—Conveyances in Excess of Capacity of Canal —Action to Cancel—Parties.

In an action to cancel deeds issued for water rights in excess of the capacity of the canal, the fact that all parties who held such excess water rights were not made parties defendant to the action is not a matter of which the defendants against whom the action was brought can complain.

### 15. Water Rights—Conveyances—Assignment.

Where an irrigation canal company issued a deed for water rights to a bank as security for money borrowed and the bank assigned the deed without recourse, the assignment did not constitute a transfer of the water rights vested in the bank, and a subsequent deed by the canal company to the assignee after the capacity of the canal had been exhausted in which it purported to recognize the assignment did not operate to give any vitality to the assignment and vested no rights in the assignee.

*Error to and Appeal from the District Court of Bent County.*

Mr. John R. Smith, Mr. George A. H. Fraser,

Mr. C. C. Goodale, Mr. George Rogers, Mr. John S. Gibons, Mr. C. J. Hughes, Jr., and Mr. A. T. Doud, for plaintiff in error and appellants.

Mr. Chas. E. Gast and Mr. Platt Rogers, for defendant in error and appellee.

Mr. Justice Gabbert delivered the opinion of the court.

The questions involved in these cases grew out of the judgment of the lower court rendered in an action brought by defendant in error and appellee against plaintiff in error and appellants, to cancel water rights claimed by them in what is now known as The Fort Lyon Canal. Several of the propositions presented for determination are the same in each case, and they will, therefore, be considered together.

The basis of plaintiff's claim, as stated in the complaint filed in the court below, is, that the water rights in controversy (excepting those held by the Henry and Porter Investment Companies) are excess rights; that is to say, rights purchased by the defendant after the estimated capacity of the canal had been disposed of. To this complaint the defendants interposed general and special demurrers, which were overruled. Plaintiff in error elected to stand by his demurrer and judgment was rendered annulling the deeds evidencing the water rights in which he was said to claim an interest. He brings that judgment here for review on error. The appellants answered. On the trial of the issues thus made, the findings of fact and conclusions of law were in favor of plaintiff, and judgment was rendered in its favor, cancelling the deeds evidencing the water rights claimed by the defendants who answered. From that judgment they appeal. In order to understand the questions raised by the demurrer,

a brief statement embracing the essential averments of the complaint is necessary. We omit, however, that portion of the complaint which relates to statements which the plaintiff abandoned (except as to the Henry and Porter Investment Companies) before judgment was rendered, and for the present, also, omit that portion specially relating to the water rights claimed by these companies.

According to the complaint it appears The Arkansas River Land, Reservoir and Canal Company and The La Junta and Lamar Canal Companies, successively, owned the canal in which water rights were sold, now known as The Fort Lyon Canal. These several water rights were evidenced by deeds, which provided that when the estimated capacity of the canal was disposed of, and water rights were outstanding and in force equal to that capacity upon which a certain proportion of the contract price had been paid, and a certain other proportion thereof had been fully paid for, that then the title to the canal should pass to the owners or holders of such contracts. It further provided the manner a company should be organized which should take the title for the benefit of the purchasers of water rights, and after the title was so vested and the water rights fully paid for, the obligations of the company selling such rights with respect to keeping the canal in repair and supplying water through the same, should cease. These companies collectively sold water rights aggregating 1,010 cubic feet per second of time, which is largely in excess of the estimated capacity of the canal and reservoir system to supply. The rights claimed by defendants (except those held by the Henry and Porter Investment Companies) were issued after the estimated capacity of the canal had been sold, and after contracts and deeds conveying such rights had been recorded in one or more

of the counties through which the canal extended.

After the capacity of the canal had been over-sold, one Hess, a water right holder in the canal, on behalf of himself and others similarly situated, commenced an action to enforce the specific performance of the contract mentioned in the deeds. The trial of this action resulted in a judgment holding that the water right owners were the owners of the canal, and such proceedings were subsequently had, that the title to the canal was vested in the Fort Lyon company for their benefit. This company avers that in making distribution of its shares of capital stock, it is embarrassed in determining what water rights to recognize as entitled to participate in the ownership of the property, and sets out those sold after the estimated capacity of the canal had been disposed of, which includes those held by the defendants (excepting those above noted), and asks that they be cancelled.

In support of the claim of counsel that the complaint does not state a cause of action, it is contended that it is deficient in that it makes no offer to return the consideration which the defendants paid for their water rights, and that the contract in the deeds which was enforced in the Hess case requires the Fort Lyon company to fulfill the obligations of the companies selling the water rights which it is now sought to cancel. These propositions are based upon the theory that the same contractual relations exist between the plaintiff company and the defendants as existed between the latter and the companies from which they purchased their water rights. Such, however, is not the relation between the parties to this action. By the very terms of the contract contained in the deed issued to the several purchasers of water rights by the companies selling them, the purchasers became the owners of the property when

the estimated capacity of the ditch was sold, and the other conditions existed which, according to the contract, brought about this result. In other words, the purchasers of water rights did not become the successors of the companies selling such rights, but the mere vendees of the property thus transferred. That part of the contract embraced in the deeds upon which counsel for defendants rely in support of their claim that the purchasers assumed the obligations of the company or companies from which they purchased only goes to the extent of releasing the vendor companies from the obligations to keep the canal in repair and supplying water through the same after the conditions existed, which, according to the terms of the contract, vested the property in the purchasers of water rights, and divested the companies of all further interest therein. The plaintiff company, therefore, in no sense stands in the shoes of the corporations which disposed of these excess water rights, nor is it in any manner responsible for the obligations of the companies selling such rights. This being true, it necessarily follows that the plaintiff is not required to plead as a condition precedent an offer to return the consideration paid for the excess rights, because it was not a party to these transactions, and no obligation rests upon it with respect to the contracts evidencing the sale of such rights upon the theory that it is required to fulfill the obligations assumed by the companies selling them.

It is next claimed that according to the averments of the complaint, the plaintiff is estopped from now asserting that the companies selling the excess rights which it is sought to have cancelled, had no authority to make such sales, because by representing that they had water rights for sale, they would not be permitted to say, after having received the consideration, that in fact the estimated capacity of

the ditch had been disposed of before these excess rights were sold. As applied to the companies making the sales, this doctrine may be correct, but as we have already endeavored to point out, the plaintiff in the present action has not assumed any obligations incurred by the companies selling these excess rights, and that no such relation exists between the plaintiff and these companies which would estop it, because they were estopped. Each purchaser of a water right, so long as the estimated capacity of the ditch was not exhausted, became an owner *pro tanto* in the property. The plaintiff company was organized for the purpose of representing these owners and controlling the property in their interest. The vendees of water rights assumed no obligations arising from the action of their vendors in attempting to sell that which they had no right to dispose of, and which was already vested in others. The title to the property which they thus purchased is now vested in the plaintiff for their use and benefit, and it assumed no obligations which they themselves did not incur. So that, while the doctrine of estoppel, as contended for by counsel, may be applicable to the companies selling these excess water rights, it is in no sense applicable to the plaintiff, for the obvious reason that no such relationship exists between it and the company selling the water rights as to estop it, because the vendors of those whom it represents may be estopped.

It is next urged that the contracts which it is sought to cancel have been executed, and that no sufficient grounds have been stated in the complaint which would justify a court of equity to exercise the extraordinary power of annulling an executed contract. Here again it is sought to invoke the application of a principle of law upon the mistaken theory that the contracts sought to be cancelled are binding

upon the plaintiff. In short, as to this and the preceding reasons urged in support of the contention that the complaint is insufficient, the answer is, that the purchasers of water rights up to the estimated capacity of the canal became its owners; that by their contracts of purchase they assumed no obligations other than those mentioned in their several deeds, which were limited to the maintenance and control of the system after the ownership was vested in a company representing the purchasers; that the plaintiff company which now represents these purchasers assumed no further obligations than were imposed upon them by their contracts of purchase, and that when the estimated capacity of the canal had been disposed of, there was nothing more vested in either of the vendor companies to sell, and purchasers of excess rights took nothing by their purchase.— *New La Junta & Lamar C. Co. v. Kreybill,* (17 Colo. App.) 67 Pac. 1026; *La Junta & Lamar C. Co. v. Hess,* 6 Colo. App. 497.

It is also contended by counsel in support of the general demurrer that the plaintiff is estopped from now cancelling the deeds evidencing the excess water rights because it appears from the complaint that the purchasers of rights within the estimated capacity of the canal permitted the title and control of the property to remain in the vendor companies for such a length of time after the purchasers had become the equitable owners of the property according to the terms of their deeds, and that during this period the excess rights were purchased; that it would be inequitable and unjust to cancel these excess rights, because by the silence and inaction of the real equitable owners, the purchasers of excess rights have been misled to their perjudice. This proposition is urged upon the theory that the purchasers now represented by plaintiff were guilty of laches. As a gen-

eral rule, laches is not a ground for demurrer. Ordinarily the party against whom any such a defense is suggested ought to have full and ample opportunity to explain it away.—*Town of Fairplay v. Board of Comrs.*, 29 Colo. 57, 67 Pac. 152. Without entering into details, it is sufficient to say that in our opinion the facts and circumstances narrated in the complaint entitle plaintiff to invoke that rule in this instance.

It is also claimed that the complaint is insufficient in that it does not allege that the purchasers of the excess rights had notice that the capacity of the canal had been sold at the time of their respective purchases: Conceding for the sake of the argument that the averments of the complaint bearing directly on this subject are insufficient, it is apparent from the deeds which these purchasers received that they were informed from their several contracts of purchase that it was only rights within the estimated capacity of the canal which the vendor companies had authority to sell. Having received this information from this source, they were put upon inquiry relative to previous sales. Had this inquiry been prosecuted with reasonable diligence, they would have ascertained the true status of the title vested in their vendor, and must, therefore, be held to have acquired notice of the real fact that the capacity of the canal had been disposed of at the time of their respective purchases.—*Allen v. Moore,* 30 Colo. 307, 70 Pac. 682.

In support of the contention that the special demurrer interposed should have been sustained, it is urged (1) that the complaint does not set forth fully the deeds issued to the purchasers represented by the plaintiff company; and (2) that there was a defect of parties in that the vendor companies should have been made parties defendant. With respect to the first reason assigned, it is sufficient to say that

no such ground was stated in the demurrer. A special demurrer should specify the grounds relied upon to support it.—Civil Code, sec. 31. The provision of the code relative to special demurrers on the ground of a defect of parties only contemplates those without whom no decree in the cause can be rendered.—Pomeroy's Rem. & Rem. Rts. §§ 329-330. The contention between the parties in this case, was, whether or not the defendants, as a matter of fact, owned any water right or any interest in the canal belonging to the plaintiff. For the purpose of determining this question, the vendor companies were in no sense necessary defendants. The plaintiff was seeking no relief as against them, and the question of whether or not the defendants had any rights in the canal as against the plaintiff could be determined and a decree entered settling that question, without the presence of the vendor companies.

This disposes of all questions raised by the demurrers, except those relating especially to the Henry and Porter Investment Companies. On the appeal, the additional questions presented are embraced in the one proposition of whether or not on the proofs submitted, and findings of fact, the decree entered against the appellants is correct. The several questions discussed by their counsel practically go to this one proposition. In disposing of these questions, however, we shall leave for final consideration those which particularly affect the rights claimed by the Henry and Porter Investment Companies.

Under the contract contained in the several water deeds issued by the vendor companies, their authority to sell water rights was limited to the estimated capacity of the canal system. On the issues made by the complaint and answers, one of the important questions of fact litigated was the capacity of the system to supply water. The court found on

this issue that the water deeds and contracts attacked by the complaint, except the one under which the Henry and Porter Investment Companies claimed their right, were issued after the capacity of the canal had been oversold, and decreed that the owners and holders of such deeds and contracts had no interest in the irrigation system belonging to the plaintiff company. This finding of fact and conclusion is challenged by the appellants upon the ground that the testimony established that the estimated capacity of the canal was sufficient to supply the water rights evidenced by the deeds and contracts cancelled, or at least, that the canal had a capacity in excess of that which the court found was its limit in this respect. This contention is based upon the assumption that the court found the capacity of the system to be 761.8 cubic feet per second of time, because it appears that the rights cancelled were issued after those aggregating this volume had been sold. The decree, when analyzed, in connection with the issues made by the pleadings and the testimony, is not susceptible of this construction. The complaint is framed upon the theory that the capacity of the canal to furnish water through its system of ditches and reservoirs was not sufficient to supply all holders of water rights, and that the rights held by the appellants, except those claimed by the Henry and Porter Investment Companies, were issued after those which exhausted the ability of the system to supply, so that the real question between the parties was, were the rights attacked in excess of the estimated capacity of the system to furnish water? The court did not specifically determine the estimated capacity of the canal in so many feet, but inasmuch as it held the rights belonging to appellants, now under consideration, were issued after the capacity of the canal had been oversold, it logically follows, from the issues

made by the pleadings, the court found that such capacity was exhausted by the deeds issued prior to any and all under which appellants claim their rights. According to the testimony, these rights were represented by deeds numbered from 1 to 358, inclusive, issued by the Arkansas River company (excepting therefrom No. 139, which represents the water rights claimed by the Henry and Porter Investment Companies). The aggregate amount of water thus represented equals 761.8 cubic feet per second of time, so it would appear from the decree that the estimated capacity of the canal was fixed at a volume, although not specifically mentioned, not more than sufficient to supply these water rights; and not, as contended by counsel for appellants, at a capacity equivalent to 761.8 cubic feet per second of time. If it should be said that statements in the brief of counsel for appellee are at variance with our conclusion on the issues between the parties, and findings of the court, the answer must be that these questions must be determined from the record, and not from the briefs. There is not, however, in our judgment, any claim made by counsel for appellee contrary to these views.

Several factors must be considered in determining the capacity of a ditch to supply water. The two important questions, therefore, to determine in disposing of the subject under consideration, are (1) the estimated capacity of the canal system; and (2) does the testimony sustain the finding of the court on that question? The size of a ditch and the aggregate volume of its priorities do not alone determine its estimated capacity. A canal can convey no more water than it can obtain from the source of its supply, while on the other hand, it can only deliver that which its physical capacity is capable of conveying. The question of the estimated capacity of a canal, as stated in a contract similar in import to the one involved

in this case, has been twice considered by this court, and once by the court of appeals, and it is authoritatively settled that it means.the ability of the canal to supply or deliver water, and that in determining this question there must be taken into consideration not only the physical capacity of the canal, but the volume of its decreed priorities, in connection with the probability of obtaining water from the stream supplying them under normal conditions during the season of irrigation.—*Wyatt v. Irr. Co.*, 18 Colo. 298, reaffirmed in 23 Colo. 480; *La Junta & Lamar Co. v. Hess, supra.*

It appears from the testimony that the priorities awarded the Arkansas. River company and to which the La Junta and Lamar company succeeded, and now belonging to the plaintiff company, consisted of 761.8 cubic feet of water per second of time, for the purpose of direct irrigation, and 335.2 cubic feet of water per second of time for storage and reservoir purposes. It also appears that a contract has been entered into with The Great Plains Water Storage Company, under which the Fort Lyon company has reserved the prior and exclusive right to convey through the headgate of its canal a volume equal to 933 cubic feet of water per second of time for the use and benefit of the consumers under this system, the storage company to have the right to use the surplus above that volume. No right, however, to any additional water is secured by the Fort Lyon company, the effect of the contract simply being to permit the storage company to convey through the canal a volume in excess of that which the Fort Lyon company reserved the right to convey. The actual capacity of the ditch to carry water was variously estimated at from eight to twelve hundred feet. During part of the irrigating season a volume of water equal to, and even in excess of the aggregate of the

decreed priorities for direct irrigation, could be obtained from the river, while at other times during this season the volume thus obtainable was as low as 164 cubic feet. It also appears from the testimony that the plaintiff company owns, as a part of the system, what is known as the King and Prince reservoirs. The latter is capable of delivering about eight feet per second of time. If the King is developed and the priorities for storage purposes utilized, it is capable of delivering the equivalent of about fifty feet per second of time. Under the contract with the Great Plains company above noticed, an arrangement has been effected, whereby the King reservoir may be utilized in the future. From this and other testimony of a similar character relating to the average stage of water in the stream during the irrigating season, it is apparent that during a part of such season the water which can be obtained from the river under the priorities for direct irrigation belonging to the plaintiff company is far less in volume than it was entitled to, so that at such times it would be unable to supply from these sources those water rights which the trial court has held exhausted the estimated capacity of the canal. The King reservoir may be developed in the future, and supplied from the priorities belonging to the company for storage purposes. If so, the water thus conserved can be utilized to reinforce that needed by those whose contracts are valid at such times when the priorities for direct irrigation are insufficient for this purpose. It was the particular province of the trial court to determine the ability of the canal to supply water, and having done so, from testimony which fully supports the finding of fact on this subject, it cannot be disturbed. In fact, we may add that a careful study of the testimony convinces us that the evidence would not have supported any finding as to the capacity of

the canal in excess of that which the court did find on the subject.

It is contended by counsel for appellants that the deeds issued by the La Junta and Lamar company are radically different from those issued by the Arkansas River company in so far as they relate to the estimated capacity of the canal. The language employed in the two sets of deeds relative to the estimated capacity of the canal is somewhat different, but, in effect, the meaning is the same in each. They were both intended to limit the authority of the respective companies to dispose of rights in excess of the estimated capacity of the ditch under the conditions which we have held determines this capacity; but even if there was any merit in the claim that the rights of holders of contracts issued by the La Junta and Lamar company are in any respect different from those issued by its immediate predecessor, it cannot avail the contract holders claiming rights under the La Junta and Lamar company, because the contracts issued by the Arkansas River company exhausted the capacity of the canal, and there was nothing left for the La Junta and Lamar company to dispose of. It acquired no additional rights which enlarged the capacity of the canal to supply water, and consequently, had nothing to sell.

In support of the averments of the answers upon which appellants rely to establish their claim that before the water rights in controversy can be cancelled, the appellants are entitled to a return of the consideration paid, they asked a witness what application was made of the funds realized from the cancelled water rights. This was objected to, and the objection sustained. Counsel assume that from the question propounded they proposed to show that the money thus paid had been used in the construction of the canal, and that for this reason the plaintiff company

should not be permitted to reap the benefits of such expenditures without recompensing the parties who furnished the money for this purpose. The testimony excluded does not, as counsel appear to assume, indicate that the money paid by the appellants was expended to improve the canal system. Merely because a witness was interrogated as to how the money was used, is not sufficient from which to deduce the conclusion that had it been answered, he would have stated that it was used as claimed. So that, if by proving that the money which appellants paid for their water rights improved the canal system, would have entitled them to the relief claimed, there was no testimony from which we can assume that any such proof was offered. Conceding, however, that appellants have offered to prove that the money they paid for their water rights was used to improve the system, there was no such relationship between those represented by the Fort Lyon company and the vendor companies or the purchasers of the excess rights as to render the former in any manner responsible for the expenditure of this money or fasten upon the property a trust as against them, merely because the money may have been expended in improving it. Neither are they estopped, as claimed by counsel for appellants, from now questioning the validity of these excess rights, if the money received for them by the vendor companies was expended upon the system with their knowledge. The attitude which the companies assumed in insisting on holding these properties and in refusing to carry out their contracts until compelled to do so after long and expensive litigation fully explains why the holders of the valid rights did not take steps at an earlier date to enforce their rights. The inaction of the valid right holders did not mislead the purchasers of excess rights. On the contrary, it appears that it was the fraud of the

vendor companies which caused the results of which they now complain.

Counsel for appellants also contend that appellee is barred by the statute of limitations from bringing and maintaining this action, because it appears from the testimony that appellants had been in possession of their water rights for a period of from five to seven years. The plea of the statute, as interposed by the answers, was to the effect that plaintiffs' cause of action did not accrue within six years before the commencement of the suit. The defense of the statute of limitations is affirmative, and must be specially pleaded. The plea as interposed is not good, because the statute upon which it is based does not apply to actions of this character.

It is sought to estop the plaintiff from maintaining this action upon two grounds: (1) That at the time of its organization the water right owners adopted a resolution to the effect that each owner of such rights should be a holder of the capital stock of the new company, and that articles of incorporation were adopted accordingly; and (2) that the order of court turning over the property to the Fort Lyon company required that it should issue its stock to each water right owner. Neither ground is tenable. When the water right owners directed the organization of a corporation which should take over the property for their benefit, and when, by the articles of incorporation, in pursuance of this resolution, it was provided how the stock of the new company should be divided among the several water right owners, it was not intended that any and all persons claiming to be such owners should be recognized. On the contrary, we must assume that it was only intended to organize a company for the benefit of those who were the actual owners of the canal system, and that stock should only be issued to such.

The order of the court turning the property over to the Fort Lyon company for the benefit of the water right owners was not *res adjudicata* on the question of who were such holders, and giving the language employed in this order its full scope, it can only be construed to mean that the company was given possession of the property as the trustee of those who were its legal owners.

It is also claimed on behalf of appellant that the resolution adopted by the board of directors relative to this action limited the authority to bring suit against the holders of water rights who had not beneficially applied the water in good faith, or where the assessments thereon had not been paid. This ground of action, except as noticed, was abandoned during the trial; and it is argued that the cause cannot be prosecuted for the purpose of cancelling excess rights. By the resolution adopted it was further provided that the board then had under consideration the practicability of relieving the canal from water rights issued in excess of its estimated capacity, and that this matter was left to their action. This clearly authorized the maintenance of a suit to cancel excess rights.

Much is said in the briefs on behalf of appellants to the effect that this action is inequitable and unjust, because all water right holders, issued in excess of the estimated capacity of the canal, were not made parties defendant, and that the appellants were selected out of a great number whose rights were also issued after the capacity of the canal had been oversold. This may appear to be an unjust and unfair discrimination, but it lies wholly with the plaintiff company to determine for itself what excess rights shall be cancelled, and what not. Merely because rights have not been cancelled which have no better standing than those of appellants is not a matter of

which they can complain, for it in no manner prejudices their rights.

The final question relates to the rights claimed by the Henry and Porter Investment Companies. So far as these rights are evidenced by any conveyance from which they can claim title direct, it appears that such conveyance was issued after the estimated capacity of the canal was sold, and such conveyance is, therefore, of no effect, except it be, as claimed in their behalf, that this conveyance was a ratification of rights claimed by them under deed No. 139, issued by the Arkansas River company before the capacity of the canal had been oversold. As to this deed, it is charged in the complaint that the rights thereby represented were issued speculatively, and have ever since been so held, and had never been put to any beneficial use by an application of water in good faith. Whether or not these averments state a cause of action is immaterial. Deed No. 139 was originally issued to The Colorado Savings Bank for the purpose of securing a loan from that institution. It was subsequently assigned without recourse. On July 22, 1896, The Arkansas River company purported to recognize this assignment, and then issued a deed to the Henry Investment Company. This action certainly did not transfer any rights to that company which had theretofore been issued under deed No. 139. That was a conveyance to the bank, and it nowhere appears that it has transferred its interest except by the assignment, but that would not constitute a transfer. So that, whatever rights under that deed, if any, are still in existence, have certainly never been vested in either the Henry or Porter Investment Companies. The judgment, therefore, of the trial court, to the effect that neither of these companies had any right or interest in the canal system under or by virtue of this deed, was correct.

In considering the various propositions urged upon our attention by counsel for appellants, we have not overlooked the fact, which is patent from the record, that the holders of the cancelled rights have suffered a great pecuniary loss. This is a matter, however, for which the appellee and the .holders of valid water rights are in no manner responsible, and the wrongs which appellants have suffered cannot be righted by imposing a loss upon others who are not accountable for them.

The judgment of the district court is affirmed.

*Affirmed.*