[No. 17789.   Department Two.   October 5, 1923.]

C. A. BLACK, *Appellant*, v. HARRY A. BAKER *et al.,*
*Respondents.*[1]

WATERS (97, 98)—IRRIGATION—CONTRACTS—WATER RIGHTS—FORE-
CLOSURE OF LIEN—INABILITY OF GRANTOR TO PERFORM CONTRACT.
Where an irrigation company, after obligating itself on contracts
to deliver water, became insolvent, conveyed its property without
obligating its grantee to perform the contracts, and the grantee for
a consideration sold all its rights to an irrigation district, without
performing the water contracts, the contracts fail for want of con-
sideration or performance, and cannot be foreclosed against the
water purchasers, who are paying the irrigation district for the
water supplied.

SAME   (100)—IRRIGATION—MAINTENANCE   CHARGES—RECOVERY—
FAILURE TO FURNISH WATER.  It is not error to deny claims for
maintenance charges on contracts to supply water for irrigation,
where it appears that sufficient water was not supplied and the
water user suffered loss of his crop.

Appeal from a judgment of the superior court for
Chelan county, Grimshaw, J., entered January 17,
1922, in favor of the defendant, in an action on con-
tract, tried to the court.   Affirmed.

*Herr, Bayley & Croson,* for appellant.

*W. O. Parr,* for respondents.

FULLERTON, J.—On September 9, 1913, the Icicle
Canal Company, then a corporation organized under
the laws of the state of Washington, and being then
the owner of certain water rights and a system of
canals for delivering water situated in the Wenat-
chee Irrigating District, contracted to sell to I. A.
Baker and Emma S. Baker, for irrigating purposes,
2,228-10,000 of one cubic foot of water per second of
time, agreeing to deliver the water from its canal sys-
tem.   The purchase price agreed upon was a lump

[1]Reported in 219 Pac. 59.

sum of $3,899, due May 1, 1919, and a maintenance
charge of $55.70 per year. Soon thereafter the cor-
poration sold, assigned and conveyed all of its prop-
erty, including its water contracts, to the Icicle Canal
Company, Incorporated, a corporation organized un-
der the laws of the state of Nevada. The corporation
first named had· also entered into numerous other con-
tracts similar to the contract entered into with Baker
and wife, and the obligations of these contracts the
Nevada corporation undertook to perform. The lat-
ter corporation became involved in financial difficulties
and was unable to deliver water in accordance with the
terms of its contracts, and in April, 1918, at the suit
of a creditor brought in the United States district court
for the eastern district of Washington, a receiver was
appointed of its property and effects.

After it became apparent that the Nevada corpora-
tion would be unable to comply with the water con-
tracts entered into by its predecessor, the holders of
the contracts formed a public irrigation district under
the name of Icicle Irrigation District, pursuant to the
provisions of the statute authorizing the organization
of such districts. (Rem. Comp. Stat., § 7417 et seq.)
[P. C. § 3197.] On July 31, 1918, the Nevada corpo-
ration, with the consent of the court in which the re-
ceivership proceeding was pending, conveyed, by title
absolute, to the Icicle Irrigation District, all of its irri-
gation system and works, reserving, however, the right
to seven and one-half cubic feet of water per one sec-
ond of time, to be delivered at such places on the irri-
gation system as it should select. Following this con-
veyance, the receiver was discharged and the receiver-
ship action dismissed. The contract of sale in no
manner obligated the irrigation district to perform the
contracts entered into by the predecessor of the

grantor; nor was the water reserved to be appropriated to that purpose. The irrigation district took possession of the water system immediately on the execution of the conveyance, and from that time has supplied its members with water from the system. It has not, however, recognized in any manner the contracts of its predecessor in interest. It has treated its purchase as being without lien or incumbrance, and has charged its users with the cost of supply. This cost has averaged in excess of twenty dollars per acre per year for the time it has operated the system, whereas the private corporation agreed to supply the water to the user perpetually at a maintenance cost of less than two dollars per acre per year.

The contract of the Icicle Canal Company with the Bakers not only provided that the contract should constitute a lien for the amount of the purchase price upon the water right agreed to be conveyed, but also upon the land of the owner which was described in the contract, and gave to the grantor or its assigns, in case of the non-payment of the purchase price, an election either to cancel the contract or to foreclose it as a lien. The present action is brought by C. A. Black, as assignee of the contract, against Harry A. Baker, the successor in interest of I. A. Baker and Emma S. Baker, electing to pursue the remedy of foreclosure. Baker defended on the grounds of non-performance on the part of the grantor named in the contract and inability to perform. The cause was tried by the court sitting without a jury, and resulted in a judgment in favor of Baker to the effect that the plaintiff take nothing by his action. The appeal is from the judgment so entered.

The appellant's learned counsel have made an able and ingenious argument in favor of their client, but

we shall not attempt to answer the argument in detail. It seems to us that there is a comparatively short answer to the contention. The respondent did not, nor did his predecessors, receive what the appellant's assignors agreed to convey to them. The agreement was to convey to them a permanent supply of water for a stated consideration and an annual fixed charge. Before the contract was ripe for execution, the grantor became insolvent, conveyed away the property without obligating its grantee to perform the contract, and now neither the grantor nor its assignor is able to comply with the contract. Seemingly, under the most fundamental principles of law, neither is entitled to recover the purchase price.

But it is said that the appellant's assignor had remaining after its conveyance to the irrigation district some form of equitable interest in the water which the respondent has acquired, and that it is no more than just that he should pay for this interest. But there is nothing in the record that justifies the conclusion that anything was reserved in the deed of conveyance other than what was expressly stated therein. The thing reserved was in itself valuable, and it was by no means the sole value the grantor received. It relieved itself of its obligation to keep up the supply of water at the agreed maintenance charge. This charge was below the actual cost of the service, and to continue to supply the water at the fixed charge could lead to no other result than the ultimate insolvency of the grantor. Nor did the respondent obtain the water he now enjoys through any right he had under the contract with the appellant's assignor. He derives his right through the public corporation to which the grantor conveyed, and its continued supply depends upon the performance of his agreements with that corporation. Nor

are the terms of this agreement as favorable to him as was the agreement with his original grantor. For the same quantity of water, he now pays annually in maintenance charges more than ten times as much as his original agreement required him to pay, and, as these payments must continue as long as he uses the water, it is not difficult to see that at no distant day he will have paid a sum greatly in excess of the original sum he agreed to pay. In our opinion, therefore, no equity exists in favor of the appellant.

There was included in the complaint a claim for maintenance charges during the last year the appellant's predecessor operated the plant. The respondent concedes this was not paid, but sets up an offset, averring that his land is planted to an apple orchard, that, during the year mentioned, the entire supply of water which was agreed to be furnish him was necessary to the maturity of the fruit grown thereon, that the agreed quantity of water was not furnished him, and as a result he lost a great part of his crop, in value many times what he agreed to pay for the water. His evidence supported his allegations, and, as there was nothing to the contrary, we see no reason for reversing the conclusion of the trial court thereon.

The judgment is affirmed.

MAIN, C. J., PARKER, TOLMAN, and PEMBERTON, JJ., concur.