Argued at Pendleton, October 2, 1924, motion to dismiss denied and decree modified, May 26, rehearing denied and decree modified July 14, mandate issued August 3, motion to recall mandate filed August 10, motion denied and decree modified September 15, mandate as amended issued September 24, motion to recall mandate filed October 3, motion allowed and mandate corrected and issued November 30, 1925.

IN RE DETERMINATION OF WATER RIGHTS OF WILLOW CREEK.

WILLOW RIVER WATER USERS ASSOCIATION ET AL. v. ORCHARDS WATER COMPANY ET AL.

(236 Pac. 487; 236 Pac. 763; 237 Pac. 682; 239 Pac. 123.)

**Associations—Cannot be Sued by Association Name, in Absence of Enabling Statute, but Members must be Joined Individually.**

1. In absence of enabling statute, voluntary association cannot be sued by its association name, but persons composing it must be joined individually.

**Appeal and Error—Transcript may be Used to Determine Sufficiency of Notice of Appeal.**

2. Transcript may be used to determine sufficiency of ambiguous or defective notice of appeal.

**Appeal and Error—Notice of Appeal in Name of Association Held Sufficient to Identify Members not Named.**

3. Notice of appeal in name of association, names of members of which appeared in its initial pleading and their exceptions to rulings, embodied in transcript filed within statutory time, *held* suffi-

————

1. Suits by or against unincorporated association, see notes in 59 **Am. Dec.** 711; 7 **Am. St. Rep.** 162. See, also, 25 **R. C. L.** 72.

cient to identify members not named therein, as parties; defect, if any, being cured by reference to transcript.

**Appeal and Error—Death of Two Members of Appealing Association Held not to Deprive Other Members of Benefit of Appeal.**

4. That two members of association, appealing from decree determining persons and land entitled to adjudicated water rights, died pending litigation did not deprive other members of right to proceed in trial or of benefit of appeal.

**Appeal and Error—Duty of Respondent's Attorney to Call Court's Attention to Death of Members of Appellant Association Before Entry of Decree Appealed from.**

5. It was duty of attorney, making affidavit in support of motion to dismiss appeal because of death of two members of appellant association, to call court's attention to such fact before decree was .entered, if he had knowledge of it then, so that substitution could be made.

**Appeal and Error—All Parties Interested in Adjudication of Inchoate Water Rights Necessary Parties to Appeal.**

6. Proceeding to adjudicate inchoate water rights in river and tributaries is in nature of proceeding *in rem*, and all parties interested in adjudication are necessary parties to appeal from decree.

**Appeal and Error—Supreme Court not Deprived of Jurisdiction on Association's Appeal by Transfer of Several Members' Interests in Subject Matter Pending Litigation.**

7. That several members of association, appealing from decree adjudicating inchoate water rights in river and its tributaries, transferred their interest pending litigation does not require substitution nor deprive Supreme Court of appellate jurisdiction.

**Appeal and Error—Appellant Need not Sign Undertaking.**

8. Appellant need not sign undertaking on appeal.

**Appeal and Error—Undertaking Sufficient, in Absence of Objection to Surety.**

9. No objection being made to surety, undertaking on appeal is sufficient.

**Appeal and Error—Appellant must Supply Necessary Papers to Give Supreme Court Jurisdiction.**

10. As Supreme Court has limited jurisdiction, appellant must supply papers necessary to appeal without aid of court to authorize decision of questions involved (§ 548, Or. L.), and notice of appeal must be complete in itself.

**Appeal and Error—Notice of Appeal Held Sufficient, Though not Naming Members of Appellant Association.**

11. Notice of appeal, addressed to association and served thereon by serving its attorneys of record, by whom all members of association appeared, *held* sufficient, though not naming members, where their names appeared in transcript.

---

8. See 2 R. C. L. 114

Appeal and Error—Courts will not Seek Occasion to Dismiss Appeals on Merely Technical Grounds.

12. It is not policy of courts to seek occasion to dismiss appeals on merely technical grounds.

Appeal and Error—Motion to Dismiss Appeal for Omission of Names of Members of Association from Notice of Appeal Held too Late.

13. Motion to dismiss appeal from decree adjudicating water rights in river and its tributaries for omission of names of members of water users' association from notice of appeal *held* too late, where not filed until over year after respondents learned of such defect, in view of Supreme Court Rule 23, and Section 5745, Or. L.; defects not being jurisdictional, and members of association being jointly interested in water system, though lands are held in severalty.

## ON THE MERITS.

Waters and Watercourses—Determination of Land, Entitled to Appurtenant Water Rights Held Proper in Proceeding to Determine Lands Entitled to Adjudicated Water Rights.

14. Consideration of question, whether irrigation system had been completed *held* necessary, and determination of what land was reclaimed and entitled to appurtenant water rights proper in supplementary proceedings to determine persons and lands entitled to enchoate water rights theretofore adjudicated.

Waters and Watercourses—Fraud in Inception of Contracts, Under Which Appellants Claimed Water Rights, not Considered.

15. Fraud, inducing members of water users' association to enter into contracts, cannot be considered on their appeal from decree entered in proceedings to determine persons and lands entitled to water rights theretofore adjudicated, where they do not seek damages or rescission, but are claiming under contracts.

Waters and Watercourses—Decree Adjudicating Water Rights in Irrigation System Held Conclusive as to Substantial Completion of Project.

16. Decree adjudicating water rights in irrigation system, which decree stated was "substantially completed," *held* conclusive of such question in supplementary proceedings to determine lands to which water was appurtenant, though project, in minor particulars, was not completed according to original plans, and system was neglected and in disrepair.

Bankruptcy—Duty of Purchasers of Irrigation System at Bankruptcy Sale to Maintain System in Good Condition.

17. It was duty of purchasers of irrigation company's property and interest in irrigation system at bankruptcy sale, and their successors, to maintain system in good condition.

Waters and Watercourses—Fraud in Transferring Irrigation System not Considered in Proceeding to Determine Land Entitled to Water Rights Adjudicated to Transferor's Predecessor.

18. Fraud in transferring irrigation system from irrigation company's proprietary successor to holding company organized to take

over and maintain system cannot be considered in supplementary proceeding to determine land entitled to water rights theretofore adjudicated to irrigation company.

**Appearance—Constitutional Law—Claimants Appearing in Response to Notices by Water Superintendent After Adjudication of Water Rights cannot Assert Lack of Due Process.**

19. Parties filing claims and traversing allegations in water company's petition for certificate of water right in irrigation system, in response to notices by water superintendent after adjudication of relative water rights, waived services of any other process, and cannot assert lack of due process under federal Constitution to bar determination of questions as to completion of system and lands to which water adjudicated 'is appurtenant.

**Equity—Jurisdiction, Obtained for One Purpose, Retained to Determine All Issues Involved.**

20. Equity, having obtained jurisdiction for one purpose, will retain jurisdiction for purpose of determining all issues involved.

**Waters and Watercourses—Holders of Contracts to Furnish Water, Without Provision for Prorating in Case of Shortage, Held Entitled to Priority Over Other Claimants.**

21. Holders of old contracts, obligating irrigation company to supply stated quantity of water without provision for prorating in case of shortage, *held* entitled to water, not exceeding quantity adjudicated by decree of Circuit Court, before supplying other claimants.

**Waters and Watercourses—Holders of Contracts for Water Held Precluded from Claiming More Than Quantity Adjudicated by Decree.**

22. Holders of contracts with irrigation company for stated quantities of water *held* precluded by decree adjudicating water rights as to quantity of water to which entitled.

**Waters and Watercourses—Company, Taking Over System, Bound to Perform Predecessor's Contracts to Furnish Water.**

23. Water company, taking over irrigation system of irrigation company, subject to latter's contracts to supply water to holders in perpetuity on payment of maintenance fees, must perform obligations thereof so long as maintenance fees are paid.

**Waters and Watercourses—Water, to Which Holders of Contracts With Irrigation Company were Entitled, Held Measurable at Place of Diversion from Main Canals of Irrigation System.**

24. Water, to which holders of contracts with irrigation company were entitled under decree adjudicating water rights, *held* measurable at place of diversion from main canals of irrigation system.

---

20. Retention of jurisdiction by court of equity, see note in 2 Am. Dec. 316. See, also, 10 R. C. L. 370.

Waters and Watercourses—Certificates of Right to Use Water on Land Described in Contracts, Carrying No Stock in or Right to Participate in Control of Holding Corporation Taking Over Irrigation System, Should Issue Directly to Owners of Land.

25.   Certificates granting right to use water on land described in contracts, carrying with them no stock in, or right to participate in control of, holding company, subsequently formed to take over irrigation system of company obligated thereby to furnish water, should issue directly to owners of such land, not to holding company.

Waters and Watercourses—One Transferring Water Rights to Irrigation Company in Return for Contract to Furnish Water cannot Claim Under Former Water Rights.

26.   One voluntarily selling and transferring water rights to irrigation company in return for contract to furnish water in certain quantities cannot claim greater quantity under former water rights.

Waters and Watercourses—Certificate of Water Rights of Members of Water Users' Association Held Issuable to Holding Company Taking Over Irrigation System.

27.   Certificate of right to use water on land described in contracts, giving members of Water Users' Association one share of stock in holding company, formed to take over irrigation system of irrigation company for every acre of land purchased from latter and its successors, should be issued to holding company for use of land described in such contracts, and not to members of association.

Waters and Watercourses—Water Superintendent cannot Pass on Demurrer to Objection to Petition for Certificate of Water Rights.

28.   Water superintendent is not a court, and hence cannot pass on question of law presented by demurrer to objections of members of Water Users' Association to petition for certificate of water rights by company organized to take over irrigation system; his capacity being that of referee appointed to take testimony, find facts, and report them to court, whereupon proceeding becomes suit in equity, in which petition, and objections and protests thereto constitute pleadings.

Waters and Watercourses—Irrigation Company, Applying Water to Its Land Before Supplying Purchasers of Land and Water Appurtenant, cannot Assert Latter's Failure to Beneficially Apply Water to Which Entitled.

29.   Successor of irrigation company, contracting to sell land and water rights appurtenant, cannot claim title to either while purchaser is in possession and not in default, and hence cannot apply water, adjudicated to it by decree, to its own land before such purchasers are supplied with quantity purchased, though they did not beneficially apply water to which entitled.

Waters and Watercourses—Corporation, Taking Over Contracts of
    Purchasers of Water from Irrigation Company, Held Obligated
    to Perform Latter's Covenants.

30.    Corporation, taking over and claiming benefits of contracts
with purchasers of land and water rights from irrigation company,
*held* obligated to perform latter's covenants therein, as successor to
its proprietary rights; stock of corporation, organized to hold title
to system and distribute water, being held by irrigation company
and its successors, not as proprietors, but in trust.

Waters and Watercourses—Purchasers of Water from Irrigation
    Company Held Entitled to Use of Agreed Quantity Before Ap-
    plication of Any to Land of Irrigation Company's Proprietary
    Successors in Interest.

31.    Corporation, succeeding to proprietary rights of irrigation
company, could not issue stock of company, organized to hold title
to irrigation system and distribute water, to other than actual *bona
fide* purchasers of land under project to which water was appurte-
nant, and hence purchasers of water from irrigation company were
entitled to use of enough to irrigate land described in their con-
tracts, not exceeding quantity stipulated therein, before application
of any to land of irrigation company's proprietary successors in
interest.

Waters and Watercourses—Complaint of Transfer of Irrigation Sys-
    tem from Irrigation Company's Successor in Interest not Con-
    sidered in Proceeding to Determine Land Entitled to Water
    Rights Adjudicated.

32.    Complaint to transfer of irrigation system from successor to
irrigation company's proprietary rights to company formed to hold
title to system and distribute water pursuant to contract between
it and irrigation company *held* collateral to issues, and hence not
considered in proceeding to determine lands to which water rights
adjudicated were appurtenant.

Waters and Watercourses—Proprietary Successor of Irrigation Com-
    pany Held not Entitled to Prorate Water With Purchasers from
    Latter in Case of Shortage.

33.    Successors to proprietary rights of irrigation company *held*
not entitled to prorate water with purchasers from irrigation com-
pany in case of shortage, as provided in purchasers' contracts; latter
being entitled to priority over such successors, who could not law-
fully apply water theretofore sold at purchaser's expense.

Waters and Watercourses—Purchasers of Water from Irrigation
    Company Held Entitled to Quantity Purchased Except in Case
    of Shortage Caused by Means Beyond Control of Owner of
    System.

34.    Water users purchasing definite quantity of water from ir-
rigation company under contracts providing for prorating in case
of shortage *held* entitled to receive such quantity, except in case of
shortage by means beyond control of owner of system and distribu-
tor of water.

Waters and Watercourses—Application to Beneficial Use Essential.

35.    No one will be allowed to claim or take water which he does
not apply to a beneficial use.

Waters and Watercourses—State's Right to Public Water Held not Involved in Proceeding to Determine Land Entitled to Use of Water.

36. No right to public water of state is involved in proceeding to determine lands entitled to use of water insufficient to supply all land to which sought to be applied.

Waters and Watercourses—Company Holding Title to Irrigation System Held Required to Reduce Outstanding Capital Stock to One Share for Each Acre of Land Awarded Water Right.

37. Outstanding capital stock of corporation, formed to hold title to and distribute water of irrigation system, and agreeing to issue one share for each acre of land purchased from irrigation company, must be reduced to one share for each acre of land awarded water right in such system.

### ON PETITION FOR REHEARING.

Trial—All Matters Involved Within Issues Tendered by Pleadings Should be Determined.

38. All matters involved within issues tendered by pleadings should be determined.

Equity—Should Dispose of the Entire Matter in One Proceeding, if Possible.

39. Equity, having acquired jurisdiction, should dispose of the entire matter in one proceeding, if possible, in view of Section 5754, Or. L.

Judgment—Parties not Before Court not Bound by Determination, Unless Privy to Parties Represented.

40. Parties not before the court are not bound by determination, unless they are privy to parties who are represented; provision being made in Sections 5749–5751, Or. L., for rehearing on a proper showing.

Judgment—Parties Bound by Determination in Proceeding to Determine Water Rights, Where Privy to Parties in Such Proceeding.

41. In proceeding to determine water rights, parties who were not before court were bound by determination, where they were privy to parties in such proceeding.

Waters and Watercourses—Water User cannot Lawfully Make Appurtenant to Own Land Water Sold.

42. Water user could not lawfully make appurtenant to its own land water adjudicated to it or its predecessor in interest, and by them sold to another.

Waters and Watercourses—Irrigation Company Could not Contract to Deliver More Water Than Amount Determined Necessary for Irrigation.

43. Irrigation company could not lawfully contract to deliver to water user to exceed three acre-feet of water, where such amount

---

38. See 21 R. C. L. 602.

was determined to be necessary for irrigation of land awarded a water right, in view of Sections 5716, 5717, subd. 2, Or. L.

**Contracts—Contract in Violation of Statute is Unenforceable.**

44. Contract in violation of positive legislation is not enforceable.

### ON TAXATION OF COSTS AND DISBURSEMENTS.

**Costs—Costs Follow Event of the Case.**

45. As a rule, costs follow the event of the case, in view of Section 567, Or. L.

**Costs—Court has Discretion With Regard to Costs in Equity.**

46. Court has discretion with regard to costs in equity.

**Waters and Watercourses—Costs Awarded Against Parties Causing Litigation.**

47. In proceeding to determine water rights, costs and disbursements would be awarded against parties who were primary cause of litigation.

### ON PETITION TO RECALL MANDATE.

**Appeal and Error—Description of Land not Inserted in Decree Distributing Water Rights, Where All Land Entitled to Use Water not Represented.**

48. A petition to Supreme Court to recall mandate in order to amend decree by incorporating therein description of all land entitled to use water will be denied where there are tracts entitled to such use, the holders of which are not parties to the proceeding, and the court cannot accurately describe all the land.

---

44. Contract in violation of statute, see note in 12 **L. R. A.** (**N. S.**) 583. See, also, 6 **R. C. L.** 701.
  (1) 4 **C. J.**, p. 1246 (Anno.).

See (1) 38 **Cyc.**, p. 1952. (2) 21 **C. J.**, p. 134. (3) 34 **C. J.**, p. 1043. (4) 34 **C. J.**, p. 1009. (5) 40 **Cyc.**, p. 835 (Anno.). (6) 40 **Cyc.**, p. 834. (7) 13 **C. J.**, p. 255. (8) 15 **C. J.**, p. 35. (9) 15 **C. J.**, p. 32. (10) 15 **C. J.**, p. 36; 40 **Cyc.**, p. 738.
  See (1) 5 **C. J.**, p. 1369. (2) 3 **C. J.**, p. 1230 (1926 Anno.). (3) 3 **C. J.**, p. 1227. (4) 3 **C. J.**, p. 1022. (5) 3 **C. J.**, p. 768. (6) 3 **C. J.**, p. 1014. (7) 3 **C. J.**, p. 1032. (8) 3 **C. J.**, p. 1129. (9) 3 **C. J.**, p. 1201. (10) 3 **C. J.**, p. 1223. (11) 3 **C. J.**, p. 1227. (12) 4 **C. J.**, p. 565. (13) 4 **C. J.**, p. 596. (14) 40 **Cyc.**, p. 816. (15) 40 **Cyc.**, p. 816. (16) 40 **Cyc.**, p. 816. (17) 7 **C. J.**, p. 826. (18) 40 **Cyc.**, p. 816. (19) 4 **C. J.**, p. 1355; 12 **C. J.**, p. 773. (20) 21 **C. J.**, p. 134. (21) 40 **Cyc.**, p. 834. (22) 40 **Cyc.**, p. 834. (23) 40 **Cyc.**, p. 826. (24) 40 **Cyc.**, p. 834. (25) 40 **Cyc.**, p. 826. (26) 40 **Cyc.**, p. 834. (27) 40 **Cyc.**, p. 826. (28) 40 **Cyc.**, pp. 815, 816. (29) 40 **Cyc.**, p. 834. (30) 40 **Cyc.**, pp. 826, 835 (1926 Anno.). (31) 40 **Cyc.**, p. 834. (32) 40 **Cyc.**, p. 816. (33) 40 **Cyc.**, p. 834. (34) 40 **Cyc.**, p. 834. (35) 40 **Cyc.**, p. 715. (36) 40 **Cyc.**, p. 816. (37) 40 **Cyc.**, p. 826 (1926 Anno.).

From Malheur: DALTON BIGGS, Judge.

In Banc.

In the month of May, 1909, C. T. Locey and J. P. Smith ·instituted proceedings for adjudicating the water rights of Willow Creek and its tributaries. Willow Creek is a tributary of Malheur River in Malheur County, Oregon.  At that time the Willow·River Land and Irrigation Company was engaged in the construction of an irrigation system for impounding and distributing the waters of Willow Creek and its tributaries in order to irrigate the lands subject to irrigation by gravitation therefrom.  That company submitted to the Board of Control its statement and proof of claim, from which it appeared that certain of the water rights had become vested through appropriation and use, while others were at that time inchoate.

On the ninth day of September, 1912, the State Board of Control made its findings of fact and order of determination in said matter.  Among other things, this order provided that the Willow River Land and Irrigation Company should be allowed until the first day of January, 1918, within which to complete its said irrigation system and apply the impounded waters to beneficial use.  To the findings thus made by the Board, in due course, certain exceptions were taken resulting in a decree of the Circuit Court for Malheur County, from which decree appeals were taken to this court.  This court approved the findings of the Water Board in the Circuit Court granting unto the said Irrigation Company until January 1, 1918, within which to complete the project and perfect the inchoate water rights: *In re Willow*

*Creek*, 74 Or. 592 (144 Pac. 505, 146 Pac. 475).  On the sixth day of June, 1916, the Circuit Court for Malheur County entered its decree in the matter on the mandate of this court.  By that decree, certain of the water rights involved in this proceeding were fixed and determined and the said inchoate rights were made subject to further determination at the expiration of the said period ending January 1, 1918.

In the spring of 1920, Hon. George T. Cochran, then State Water Superintendent, gave notice to all parties interested in said inchoate water rights to appear before the board at a date and time fixed in the notice, and submit proof of the matters involved. During the interim, between the initiation of the first proceedings in the matter and the hearing which was held pursuant to said notice, the Willow River Land and Irrigation Company had been succeeded by the Moline Farms Company.  The Willow River Land and Irrigation Company became bankrupt and passed out of existence.  All of its property was sold by trustees in bankruptcy on the twenty-fourth day of May, 1913, and its entire interest in said project, together with its other properties, including whatever interest it had in the capital stock of the Orchards Water Company, was sold and transferred to William Butterworth, Douglas Smith, and Albert G. Lester, by the trustees of Willow River Land and Irrigation Company, bankrupt.  The said purchasers purchased and held said property in behalf of certain creditors of the bankrupt company, among which creditors said purchasers were numbered.  On or about the twenty-seventh day of September, 1917, said purchasers transferred the properties so acquired by them to said William Butterworth, who afterwards, with

others, under the laws of the State of Delaware, organized the corporation, Moline Farms Company, one of the parties to this proceeding.   This transfer was made on the seventeenth day of December, 1917.

On March 19, 1910, the Willow River Land and Irrigation Company entered into a contract with the Orchards Water Company, an Oregon corporation, by terms of which the Willow River Land and Irrigation Company agreed to convey to the Orchards Water Company, within five years from that date, by good and sufficient quitclaim deed, the said irrigation system, including all the right, title and interest which the said Irrigation Company had or might thereafter acquire in and to the water of said Willow Creek or its tributaries, and to all flood waters flowing therein.   The said Willow River Land and Irrigation Company, in addition to owning the irrigation system, owned a large quantty of land subject to irrigation therefrom.   This land, together with the water rights, was offered for sale in small parcels.   The water right was to be evidenced by one share of the capital stock of the Orchards Water Company for each acre of land purchased.   It was intended that the purchasers of land and water rights from the Willow River Land and Irrigation Company should become the owners of all the capital stock of the Orchards Water Company, and thereby become the owners of the entire irrigation system.   The Orchards Water Company was organized for the purpose of distributing the water and maintaining the irrigation system, and all of the stock of that company was eventually to become the property of the water users.

After the Willow River Land and Irrigation Company became bankrupt about 1912, forty-four pur-

chasers from said Willow River Land and Irrigation
Company associated themselves together as a volun-
tary association for their mutual protection, adopting
the name of Water Users Association of Willow
Creek or Willow River Water Users Association.
Thereafter, in a number of instances in different pro-
ceedings growing out of the bankruptcy, notices were
given and signed Willow River Water Users Associ-
ation, by A. A. Reed, President, and W. A. Eaton,
Secretary. In the original proceedings, particularly
those instituted for the purpose of presenting claims
and submitting proof for determining the land under
said project to which water would become appurte-
nant and vested, the members of the Willow River
Water Users Association were not parties. The
members of that association did not receive any no-
tice of, or participate in, the proceedings adjudicating
the water rights of said Willow Creek.

In the supplementary proceedings, instituted, as
aforesaid in 1920, for the determination of all the
persons and land entitled to vested water rights un-
der said irrigation system, notices were sent to the
members of the Willow River Water Users Associ-
ation. These water users appeared by their attor-
neys, Nichols, Hallock & Donald, and filed a paper
styled: "Protest, Statement and Proof of Claim of
the Members of Willow River Water Users Associ-
ation." This paper is subscribed by forty-four per-
sons, who are members of said association, and men-
tions in detail the claim of each member of said
association, describing the land owned and claimed by
him, entitled to the use of water from said system.

During the tortious course of this and the bankrupt
proceedings, the association of water users, or some

of the members thereof, gave notice in detail of their interests, including a protest to the sale, a protest to the referee in bankruptcy, and a notice to Hon. J. H. Lewis, then president of the Board of Control, signing all of them Willow River Water Users Association, sometimes by its President, A. A. Reed, and W. A. Eaton, Secretary, and at other times by W. A. Eaton, Secretary.

On the tenth day of March, 1913, some members of the association directed a notice to the prospective bidders for the purchase of the property of Willow River Land and Irrigation Company at a sale to be held on that date by the trustees in bankruptcy at Vale, Oregon, which notice was signed by thirty-eight members without using the name of the association. These thirty-eight persons are referred to, however, as members of said association in the formal claim presented in this proceeding by the forty-four persons named as composing the Willow River Water Users Association.

It is further stated in the claim of the Water Users Association, that the claimants served upon the said Orchards Water Company a signed communication which is signed by twenty-three individuals without designating themselves as Willow River Water Users Association. The claim of the members of the Water Users Association concludes with a prayer as follows:

"That said Board by said order provide and direct that the lands of claimants herein described * * be first served with an amount of water sufficient to * * beneficially irrigate the same."

The claim of the Water Users Association, including the exhibits, consists of 156 pages of printed

matter. The Willow River Water Users Association was not satisfied with the decree of the Circuit Court and gave notice of appeal to this court, which was duly served upon all of the other parties to the proceeding. The notice of appeal described the appellants as "Willow River Waters Users Association, including all of the members thereof." The respondents, Orchards Water Company, Moline Farms Company, and G. J. Magenheimer, at the time this cause came on for hearing on the merits, filed a motion to dismiss the appeal of the Willow River Water Users Association, specifying their grounds for said motion as follows:

"That the notice of appeal does not specify nor set forth the matters specified and required by statute, and particularly in that said notice of appeal does not contain the names of the parties and does not sufficiently describe the decree appealed from; that as appears in the transcript the said association is an unincorporated association of individuals, and the names of those who are members thereof are not stated in the notice of appeal and as a matter of fact a number of the alleged members of said association are dead, and were dead at the time said notice of appeal was served and filed, and others had transferred all their interest in the property herein prior to the giving of such notice of appeal."

The motion is supported by the affidavit of H. M. Cake, one of the attorneys for said respondents. A counter-affidavit by G. H. Bridwell was presented in behalf of said appellant.

Thereafter, to wit, on the twenty-eighth day of February, 1925, the same respondents filed motions to dismiss the separate appeals of Emory Cole, and of W. B. Eaton, S. M. Willis, Ralph Harvey, Mary Coleman, J. A. Coleman and the estate of Tschirgi, assigning as a reason for said motion, that—

"The court did not acquire jurisdiction of the attempted appeal of the above named parties for the reason that many of the adverse parties * * have not been named in or served with notice of appeal."

The last two mentioned motions to dismiss are doubtless based upon the fact that the notices were not directed individually to the members of the Willow River Water Users Association. Service of both of the last mentioned notices of appeal were duly made on the attorneys of record for all of the members of said Water Users Association. Those notices of appeal are directed as follows: In the appeal of Emory Cole, as, "Willow River Water Users Association by Nichols & Hallock, its attorneys." In the appeal of S. M. Willis and others as, "Willow Water Users Association and all of the members thereof, both private and corporate, and to Nichols, Hallock and Donald, their attorneys."

The notice of appeal given by the Water Users Association was served by mail on the attorneys of record for the respondents moving to dismiss. The deposit in the postoffice was made on the thirtieth day of September, 1923. In due course of mail it should have been received by said attorneys not later than the second day of October, 1923. The transcript was filed in this court on the tenth day of October, 1923. The motion to dismiss was not presented, filed or served until the twenty-eighth day of October, 1924, when the cause came on for oral argument at Pendleton.

We adopt the following statement from the brief of appellant, Willow River Water Users Association:

"The second paragraph of this protest and statement reads:

" 'That during all of the times and dates hereinafter mentioned the individuals above named and each of

them were and are now members of a voluntary association formed and existing for the protection of the interests of its members in and to the water of Willow Creek and its tributaries, and in and to a certain system known as the Willow River Land & Irrigation Company project in Malheur County, Oregon, said association being known as Willow River Water Users Association and hereinafter referred to as ''The Association.'' '

"On the 18th day of October, 1920, respondent, Orchards Water Company, filed with the Water Board a demurrer to this protest, statement and proof of claim, the same being designated, 'Demurrer of Orchards Water Company to Protest of Willow River Water Users Association.' On the same date said respondent filed with the Water Board its reply denominated, 'Reply of Orchards Water Company to the statement, protest and answer of Willow River Water Users Association.' There were likewise filed with the Water Board on that date replies prepared by G. J. Magenheimer and Moline Farms Company, the same being designated respectively, 'Reply of G. J. Magenheimer to protest, statement and proof of claim of Willow Water Users Asociation,' and 'Reply of Moline Farms Company to protest, statements and proofs of claim of Willow River Water Users Association.'

"The matter having been thus got at issue the State Water Board made its findings and order of determination to which the exceptions were filed by numerous parties to the record, all as will more fully appear from the abstract in this appeal. The exceptions filed by appellant were denominated 'Exceptions of Willow River Water Users Association to the Supplemental Findings and Order of Determination of the State Water Board.' The first paragraph of these exceptions again contains the names of the forty-four individuals constituting the Willow River Water Users Association.

"Paragraph three of the decree made and entered by the Circuit Court for Malheur County in this matter recites:

" 'That the Willow River Water Users Association, comprising some forty-four individuals and water users under said project of Orchards Water Company has appeared in these proceedings and filed a protest and statement and proof of claim objecting to the proof filed by said Orchards Water Company as to the completion of said inchoate rights and asserting their claim to the right to use of water under the irrigation system of said company.'

"Numerous briefs, stipulations and other papers were filed by the various parties to this proceeding both before the State Water Board, the Circuit and Supreme Courts, in all of which appellant was referred to as Willow River Water Users Association. More than four years have been consumed in the different steps of this litigation, a vast amount of work has been performed, a voluminous transcript of testimony has been prepared, briefs on behalf of appellants, cross-appellants and respondents have been filed with this court and the case has been argued on its merits."

Motion to Dismiss Denied. Decree Modified.

For appellant Willow River Water Users Association there was a brief over the name of *Messrs. Nichols, Hallock & Donald,* with an oral argument by *Mr. James H. Nichols.*

For cross-appellants W. B. Eaton et al., there was a brief and oral argument by *Mr. P. J. Gallagher.*

For cross-appellant Emory Cole there was a brief and oral argument by *Mr. C. M. Crandall.*

For respondent Orchards Water Company there was a brief over the names of *Messrs. Davis & Lytle, Messrs. Cake & Cake* and *Mr. L. A. Liljeqvist.*

For respondents Moline Farms Company and G. J. Magenheimer there was a brief over the name of *Mr. George E. Davis.*

COSHOW, J.—1. As appears from the statement of the claim of the Water Users Association, it is a voluntary association organized for the protection of its members, but without a legal entity as such. It is not a corporation.

"In the absence of an enabling statute, a voluntary association cannot be sued by its association name. It has no legal existence, and the persons composing it must be joined individually." *Kimball* v. *Lower Columbia Fire Assn.,* 67 Or. 249, 252 (135 Pac. 877).

2, 3. The initial pleading of the Water Users Association in this proceeding is the paper denominated: "Protest, Statement and Proof of Claim of the Members of Willow River Water Users Association." In this statement the names of all the members appear. The association does not appear as a legal entity, but the members thereof are all named and their claims separately stated. The Water Users Association not being satisfied with the findings of the Water Board, appealed to the Circuit Court. In this appeal the names of all the members of the association are again set out in their exceptions to the rulings. Thereafter, in all of the various steps taken in this suit, the members of the association are referred to as the Willow River Water Users Association as a matter of convenience. That is certain which can be made certain. By referring to the transcript, the names of the members of the association are readily ascertainable. There cannot possibly be any confusion resulting from the use of the name Willow River Water Users Association. All the parties to this litigation are familiar with the names of those composing the association.

No defect in the notice of appeal is mentioned or pointed out by the respondents moving to dismiss, excepting that the names of the members of this association are not all set out in the notice. No question is raised about the validity of the service of the notice of appeal. The notice of appeal contains the name of the court, the title of the cause, and is addressed to all the parties to the litigation excepting the appellants, the members of the Willow River Water Users Association. It has been frequently held by this court that the transcript may be used to determine the sufficiency of the notice of appeal where it is ambiguous or defective: *Lee* v. *Gram*, 105 Or. 49 (196 Pac. 373, 209 Pac. 474, 27 A. L. R. 1001).

A notice of appeal was given to all of the adverse parties and was legally served. A transcript was filed in this court within the time limited by statute. The court, therefore, has jurisdiction of the cause. The notice is not void. It may be doubted that it is even defective. But if it be conceded to be defective, the defect is cured by reference to the transcript. No litigant could possibly have been misled by the notice, and no party to the record can in any way be prejudiced thereby. The objection to the notice, because of the omission of the names of the individuals composing the Willow River Water Users Association, is not well taken. It contains sufficient to identify the appellants as parties in the litigation: *In re Waters of Chewaucan River*, 89 Or. 659, 667 (171 Pac. 402, 175 Pac. 421).

4-6. Another reason assigned for dismissing the appeal of the Water Users Association is that several of the members of appellant association are dead. It appears from the affidavit of Mr. Bridwell, which is not controverted in that respect, that the members of the Water Users Association are distributed over a

large part of the United States. The affidavit of Mr. Cake, in support of the motion to dismiss, recites that Frank Buchanan and Charles J. King, members of said Water Users Association, died some time prior to the date the decree appealed from was entered in the Circuit Court. No mention of that fact was made in the Circuit Court. It may be that the attorneys for the Water Users Association had no knowledge of that event. There is nothing in the record that indicates that knowledge of the death of these parties, both of whom lived in the state of Ohio, was known to the attorneys for the appellant Water Users Association. The fact that two members of the association died during the pendency of the litigation would not deprive the other members of the association from proceeding in the trial. That fact does not deprive this court of the jurisdiction of the cause.

We express no opinion as to what disposition may be made of the interest of the heirs at law or beneficiaries of the estate of said deceasd members. It does appear from the affidavit of Mr. Cake, which is not controverted in that regard, that M. A. Buchanan was the sole heir at law and widow of the said Frank Buchanan and had conveyed all of her interest in the property involved in this controversy. To whom she conveyed that property is not mentioned. The same state of facts exists as to the heirs at law of the said Charles A. King. It appears that the interest of both of the said decedents is now owned by some other party and that the conveyance was made prior to the rendering and entering of the decree in the Circuit Court in this cause.

The affidavit of Mr. Cake does not set out the time when he became familiar with the facts set up in his affidavit, but it was his duty to have called the attention of the Circuit Court to the death of the parties,

before the decree appealed from was entered, if he had knowledge of it then, so that substitution could have been made.  In any event, the death of these two parties would not deprive the other forty-two members of the association of the right of appeal: *Young's Estate,* 59 Or. 348, 360 (116 Pac. 95, 116 Pac. 1060, Ann. Cas. 1913B, 1310).

This litigation is in the nature of a proceeding *in rem.*  The subject matter of the suit is the adjudication of the inchoate water rights of Willow River and its tributaries.  All the parties interested in adjudicating that inchoate right are necessary parties to the appeal: *In re Willow Creek,* 74 Or. 592 (144 Pac. 505, 146 Pac. 475); *In re Waters of Chewaucan River,* 89 Or. 659 (171 Pac. 402, 175 Pac. 421).

All of the parties to the proceeding who appeared were duly served in the instant case with notices of appeal.  Believing as we do, that the notices of appeal given by the Water Users Association substantially complies with every requirement of the statute for taking appeals to this court, we hold it sufficient and that the death of the two parties pending litigation does not deprive the other members of the association of the benefit of the appeal.

7. A further objection made was that several other members of the association transferred their interest in the subject matter pending the litigation.  This, of itself, does not require even a substitution, much less does it deprive this court of jurisdiction: *Medynski* v. *Theiss,* 36 Or. 397 (59 Pac. 871).

8, 9. The undertaking on appeal in this case is signed Willow River Water Users Association, by Charles L. Woodard, President; Attest: A. B. Cox, Secretary.  It is not necessary for the appellant to sign the undertaking on appeal: *O'Connor* v. *Towey,* 70 Or. 399, 401 (140 Pac. 625).  No objection is made to

the surety on the undertaking, consequently, the undertaking is sufficient.

10-12. The motion to dismiss the appeal of W. B. Eaton et al., while not expressed in the same language, is based upon the same defect, to wit: That the names of the members of the Water Users Association are not named in the notice of appeal. The motion to dismiss is made by the same respondents who moved to dismiss the appeal of the Water Users Association. That association is not complaining nor attacking in any way the notice of appeal given by W. B. Eaton and others. The notice names the Water Users Association in the same language in which it is designated in the decree of the Circuit Court. We have only to look to the transcript to find the names of the members of that association. Service was made of the notice of appeal exactly as it would have been made, no doubt, in case the names of all the members of said association had been embodied in the notice of appeal, because all of the members of that association appeared by the same firm of attorneys, and service was made upon the association by serving its attorneys of record. It is true, as was so aptly said by Chief Justice BURNETT, September, 1922, in *Lee* v. *Gram*, 105 Or. 49, 53 (196 Pac. 373, 27 A. L. R. 1001), that—

"As the Supreme Court is a court of limited jurisdiction, a party desiring to appeal must at his peril frame the papers necessary to his appeal as required by the statute; for 'not otherwise,' in the language of Section 548, can this court acquire authority to decide the questions involved in an appeal. The party appealing must himself without aid from this court supply the documents necessary to his appeal. Being without jurisdiction until he does so, we cannot reach out an aiding hand and help him into court."

It is necessary that the notice of appeal must be complete in itself. We repeat, that is certain which can be made certain. Applying that maxim of equity, we are of the opinion that the notice of appeal duly given and served by W. B. Eaton et al., is sufficient. As was said by Mr. Chief Justice McBride in *Oxman* v. *Baker County,* 115 Or. 436 (234 Pac. 799, 236 Pac. 1040): "It is not the policy of the courts to seek occasion to dismiss appeals upon merely technical grounds."

13. This language of Mr. Chief Justice McBride is particularly applicable to the notices of appeal moved against in this litigation. The reason assigned for dismissing the appeal is very technical. No one could have been misled by the language of the notices even if we concede the notices to be defective. Rule 23, of this court, prescribes:

"All motions must be filed within ten days after a party or his attorney obtains knowledge of an alleged failure of the adverse party or his attorney to comply with the requirements of the statute or with the rules of this court and unless so filed all defects, except objections to the jurisdiction of the court, will be taken as waived by the moving party." 100 Or. 752; *Iltz* v. *Krieger,* 104 Or. 59 (202 Pac. 409, 206 Pac. 550).

The first of the three notices to dismiss was not filed until more than a year after the respondents obtained knowledge of the alleged defect in the notice of appeal.

In our opinion the defects in the notices were not jursidictional and, therefore, the motion to dismiss came too late. Our conclusion is fortified by the express provision of our statute, Section 5745, Or. L., which contains the following language:

"At any time prior to the hearing provided for in section 5743, Oregon Laws, as in this act amended,

119 Or.—12

any party or parties jointly interested may file exceptions in writing to such findings and order of determination, or any part or parts thereof, which exceptions shall state with a reasonable degree of certainty the grounds of the exceptions and shall specify the particular paragraphs or parts of such findings and order excepted to."

There are other provisions in the Water Code clearly indicating the intention of the legislature to provide for those whose interests are joint to unite in the proceedings instituted to determine relative water rights. There can be no doubt that the appellants are jointly interested in the water system though their lands are held in severalty. What we have said regarding the motion to dismiss the appeal of W. B. Eaton et al., applies with equal force to the motion to dismiss the appeal of Emory Cole. All of the motions to dismiss the appeal are denied.

## On the Merits.

14. This proceeding is supplemental to the proceedings instituted by Locey and Smith in 1909. The waters of Willow Creek and its tributaries are adjudicated in that proceeding. The successor in interest in and to the irrigation system and other properties of the Irrigation Company, which had become bankrupt in the meantime, transferred the system to the respondent Orchards Water Company, September 27, 1919. The Orchards Water Company was organized by the Willow River Land and Irrigation Company as a holding company. By the terms of the contracts between those two companies, the vendees of the Irrigation Company were to receive one share of the capital stock of the Orchards Water Company for every acre of land purchased from the Irrigation Company. The contract between those companies further provided that five years after the date thereof,

the Irrigation Company should transfer to the Orchards Water Company the irrigation system. The intention of the parties to that contract was to invest in the vendees of the Irrigation Company, by virtue of their purchase of the land and water right from the Irrigation Company, the actual ownership of all of the Orchards Water Company capital stock.

After the transfer of the irrigation system to the Orchards Water Company it filed its petition and claim asserting that it had complied with the provisions of the former decree in this proceeding and demanded a water certificate as provided by statute. This petition contained a description of the land which had been reclaimed and to which the water had become appurtenant. Thereupon, the water superintendent gave notice to all persons claiming an interest through the system, to appear at a certain date and present their claims. Pursuant to said notice, the forty-four individuals appearing herein under the name of the Willow River Water Users Association filed their claims traversing a number of the allegations in the petitions of the Orchards Water Company and particularly challenging the allegations that the system had been completed and the correctness of the description of the land to which the water had become appurtenant. The Water Users Association also alleged fraud and misrepresentations by means of which they had been induced to enter into the contracts under which they claimed their respective water rights.

The Willow River Land and Irrigation Company had prepared two forms of contracts. The first form used and referred to in the record as the ''old form'' contract provided for 4.2 acre-feet per acre. The cross-appellants hold old form contracts. The original decree of adjudication in this proceeding deter-

mined the duty of water of Willow River to be three acre-feet per acre. The Circuit Court confined the cross-appellants in this appeal to that amount of water in accordance with the former decree of this court. The cross-appellants complain of the provisions in the decree for prorating with other water users under the project. The old form contract does not provide for prorating. The contention of the cross-appellants is that they have a binding contract with the Irrigation Company and its successors whereby they were to receive during the irrigation season perpetually a quantity of water equal to 4.2 acre-feet and that they are entitled to that amount regardless of whether or not those who purchased later and hold the new form contract received water.

The respondents Orchards Water Company, Moline Farms Company and G. J. Magenheimer contend that inasmuch as this is a mere continuation of the former proceeding and is supplementary thereto, the appellants have no right to be heard in this proceeding. Their contention is to the effect that the only matter to be determined is the amount of land that has been reclaimed and to which the water is appurtenant; and that should be determined upon the petition of the Orchards Water Company the holder of the legal title to the water right. But the appellants have traversed the claim of the Orchards Water Company that the irrigation system has been completed, and also earnestly contend that the description of the land to which the water has become appurtenant, as set out in the petition of the Orchards Water Company, is not correct. The question as to whether or not the system has been completed is directly in issue and must be determined. The description of the land to which the water has become appurtenant should also be accurate and definite. The original adjudication did not at-

tempt to describe specifically the land intended to be irrigated under this project. The description in that decree is general and referred to all of the land capable of irrigation by gravitation providing the water supply is sufficient and the water has been applied to it. The original plan of the Irrigation Company was to irrigate about 50,000 acres, and with that intention in view, organized the Orchards Water Company with a capital stock of 50,000 shares of the par value of $1 per share. It now appears from the record that less than 5,000 acres have been reclaimed. It appears, therefore, to be proper, if not necessary, to entertain the issues raised by the claims of the appellant and the cross-appellants and determine in this proceeding what land has been reclaimed and is entitled to have water rights perpetually made appurtenant thereto.

15. The claim of fraud on the part of appellants, however, cannot be sustained. Neither the Water Board nor the Circuit Court considered the evidence adducted to sustain the allegation of fraud. If any fraud was practiced, as alleged by the appellants, it occurred in the inception of the contracts. These contracts were made by the water users and their predecessors in interest with the Willow River Land and Irrigation Company. They do not seek to rescind their contracts in this suit but are claiming under those contracts. They do not ask for damages. The question of fraud in the inception, therefore, is eliminated from the case.

16, 17. All of the appellants and cross-appellants are vitally interested in having determined the description of the land to which the water is to become appurtenant when the water right shall be issued. They were all notified to appear and present their claims. None of them is a party to the original pro-

ceeding.  This matter is not now before this court for the purpose of determining the relative rights of the waters of the stream.  The claims of all of the appellants and cross-appellants are based upon the same water right.  This is the same water right for which the respondent company has petitioned for a certificate.  The contention between the parties to the proceeding is largely in the nature of separable controversies and ordinarily would not be considered in a proceeding of this nature, but the controversies involved have all grown out of the claim of the respondent Orchards Water Company that its predecessor in interest has completed the irrigation system, had reclaimed certain land under that system and had applied the water to a beneficial use to the tracts of land in their petition specifically described.  These allegations are directly challenged.  A certificate of water right cannot be issued accurately describing the land to which the water is to be appurtenant without determining the issues thus framed.

The original decree contains this expression: "The system is substantially completed": *In re Willow Creek,* 74 Or. 592, 631 (144 Pac. 505, 146 Pac. 475).  A great deal of testimony was taken tending to show that the system had not been completed.  A large portion of the extensive briefs is devoted to argument upon the question as to whether or not the system was completed when transferred to the Orchards Water Company.  We are of the opinion that the former decree in this proceeding is conclusive of that question.  The use of the word "substantially" there would indicate that while the system was not complete in every detail, yet it was complete so far as its general plan was involved.  The substance of the system was complete. Only minor details remained to receive attention.  It appears that during the bankrupt proceeding against

the original Irrigation Company and the transfers, the system has become more or less out of repair. It was the duty of the purchasers at the bankruptcy sale, and their successors, to maintain the system in good condition. The original Irrigation Company intended and planned to sell about 50,000 acres of land, which should be irrigated from this system. This clearly appears from having made the capital stock of the Orchards Water Company $50,000. Comparatively early in the progress of the project the promoters realized their inability to impound sufficient water to irrigate such a quantity of land and the plans were changed from time to time. A record of these changes and plans was before the court when the original adjudication was made and we are now bound by the decree rendered by this court and by the Circuit Court upon the mandate from this court in 1915 and 1916, respectively. The decree of adjudication provided for the irrigation of so much of 15,000 acres as should be reclaimed and irrigated under the project on or before January 1, 1918.

18. We conclude, therefore, notwithstanding the evidence indicates in minor particulars that the project was not completed in accordance with the original plans, and that the system had been neglected and permitted to fall in disrepair, that we must affirm the Circuit Court's decree in effect approving the transfer of the irrigation system from the successor of the Willow River Land and Irrigation Company to the Orchards Water Company. We believe that it is not permissible in this proceeding to attempt to litigate the allegations of fraud in making the transfer of the system from Moline Farms Company to Orchards Water Company. This proceeding should be limited to determining the land entitled to the water rights adjudicated to the Irrigation Company heretofore.

19, 20. It is claimed by the respondents that this proceeding should be limited to a determination of the relative rights to the waters of Willow Creek and its tributaries; that under due process of the provisions of the federal Constitution, the legislature is without authority to provide for the settlement of separate controversies in a proceeding where the only compulsory notice given is that of publication and service by mail. But the relative rights of the waters of Willow Creek and its tributaries were adjudicated in the former decree in this proceeding. The questions for determination now are whether or not the system has been completed and the proper description of the land which has been reclaimed and to which the water adjudicated to the Willow River Land and Irrigation Company has become appurtenant. Notices were sent to all of the appellants by the Water Superintendent. In response to those notices the appellants all filed their claims and traversed the allegations in the petition of the respondents Orchards Water Company for a certificate of a water right. We do not believe, therefore, that the respondents Orchards Water Company, Moline Farms Company and G. J. Magenheimer are in a position to raise the question of due process. There can be no doubt that the court has jurisdiction of the subject matter. The parties have all appeared and thereby waived the service of any other process upon them. They have submitted themselves to the jurisdiction of the court. The cases relied upon by respondents were cases involving the adjudication of the relative water rights to a source of water supply. In this proceeding that adjudication has already taken place. The question now presented is a different question. Equity having obtained jurisdiction for one purpose will retain jurisdiction for the purpose of determining all the issues involved. It is

not necessary for us to determine whether or not the appellants would have been concluded upon the issues framed by the different claims, protests and contentions if they had not appeared in answer to said notices and submitted themselves to the jurisdiction of the court. They have appeared. They have joined issue and we cannot rightfully refuse to entertain jurisdiction and determine the issues joined. The case of *In re Water Rights in McFarlane Creek in Okanogan County,* 126 Wash. 364 (218 Pac. 248, 250), cited by respondents, seems to authorize the trial of incidental matters even in the adjudication of water rights where those matters are properly raised. The opinion of the court concludes with this sentence:

"We conclude that the trial court had jurisdiction to determine the easement rights of Mills and wife in the ditch carrying their water over the Williams' land, as well as the respective water rights of the parties."

The case of *North Powder Milling & Mercantile Co.* v. *The Pacific Fruit Express Co.,* 101 Or. 18, 28 (198 Pac. 893, 896), contains this language:

"Indeed, it may well be doubted whether the jurisdiction of the Water Board goes to the extent of authorizing it to settle controversies as to the ownership of ditches: (Authorities cited). But, conceding that it has such jurisdiction, it has not so decreed in the instance now being considered, audit is unnecessary to follow that branch of the discussion."

In this case it was contended by one party that the adjudication of the water of North Powder River had determined the question involved and the other party was precluded thereby. All of the other cases cited by respondents were cases instituted for the purpose of adjudicating the relative water rights of a source of water supply. That has been done in this case.

All of the parties are claiming through the same appropriation. There is no attempt to question the former decree adjudicating the water right. None of the parties to this suit has sought to in any way modify that decree. The issues framed in the instant case are here for the first time. No case has been cited by either respondents or appellants directly in point. The cases relied upon by appellants clearly rule as contended for by appellants but were cases not involving the adjudication of water rights by appropriation. The matter was not litigated in a proceeding instituted for the purpose of adjudicating relative water rights from the same source of water supply. Our Water Code expressly provides that when the matter of water adjudication reaches the Circuit Court it shall be determined as a suit in equity. The matters of the completion of the system and the particular land to which the water is to become appurtenant are necessarily involved and should be determined: *In re Umatilla River*, 88 Or. 376, 399–400 (168 Pac. 922, 172 Pac. 97).

21. Appellants W. B. Eaton and others all holding old form contracts are prior in time to all of the other claimants to the water in this proceeding. Their contracts do not provide for prorating in case of shortage. The obligation of the Willow River Land and Irrigation Company to supply the quantity of water mentioned in the contract is absolute. It contains no limitations or restrictions. Their claim, if satisfied, would not change the decree adjudicating the water of the Willow River Land and Irrigation Company. The controversy is between the cross-appellants W. B. Bates and others, the appellants and the respondents, involving the water heretofore adjudicated to the Irrigation Company. The Water Code recognizes the principle in water appropriations

of priority in time being superior in right. We hold, therefore, that the cross-appellants, Emory Cole, W. B. Eaton, and others are entitled to have the water purchased by them and as defined in their contract supplied before the other users from that system are entitled to water, provided, always that the water so supplied does not exceed three acre-feet during the irrigating season.

22. Another contention on the part of the cross-appellants W. B. Eaton and others is as to the quantity of water to which they are entitled. Upon this contention they are precluded by the former decree in this court. That decree, however, does not define the place where the water is to be measured.

23. The old form contracts of the cross-appellants, W. B. Eaton and others, provides for the delivery of the water in perpetuity upon the payment of a maintenance fee of $1 per acre. So long as the purchasers of that water right from the Willow River Land and Irrigation Company paid said maintenance fee they are entitled to have the water delivered to them. The Orchards Water Company, one of the respondents, has received the irrigation system constructed by and formerly owned by said Irrigation Company, subject to these contracts with the cross-appellants, W. B. Eaton and others. In that respect the Orchards Water Company is the successor in interest of the Willow River Land and Irrigation Company and must perform the obligations of said Irrigation Company contained in said old form contracts.

24. The decree of the Circuit Court prescribes that said water shall be measured at the place of diversion from the main canals of the said irrigation system. That portion of the decree of the Circuit Court is affirmed.

25. The old form contracts do not carry with them any of the stock in the Orchards Water Company. They are not permitted by the terms of the said old form contracts to participate in the control or management of the Orchards Water Company. The water certificates, therefore, granting the right to the use of the water on the land described in the old form contracts should issue directly to the owners of the land therein described and not to the Orchards Water Company.

26. The cross-appellant, Emory Cole, as the holder of one of the old form contracts, sustains the same relation to the water right adjudicated to the Willow River Land and Irrigation Company as the cross-appellant, W. B. Eaton, and others, so far as the land described in his old form contract is affected. His right to the use of water on the land described in the old form contract is defined by the terms of that contract. He voluntarily sold and transferred to the Willow River Land and Irrigation Company his water rights and accepted from the Irrigation Company the old form contract. He cannot, therefore, claim under his former water rights. All the cross-appellants are concluded by the decree of adjudication heretofore entered in the Circuit Court, upon a mandate from this court, from claiming a greater quantity of water than three acre-feet.

27. The members of the Water Users Association, appellants herein, sustain a different relation to the Orchards Water Company. They are practically that company at the present time. The Orchards Water Company was a holding company. The members of the Water Users Association are the equitable owners of the stock of that company. By the terms of the new form contract, by virtue of which all members of the Water Users Association claiming a right to the

use of the water of Willow Creek as purchasers of land and water rights from the Willow River Land and Irrigation Company and its successors, became the owners of one share of stock for every acre of land purchased. It was provided in said contract in effect that the amount of capital stock of the Orchards Water Company should be adjusted to the number of acres irrigated by said system under the new form contracts. The users of the waters of Willow Creek would, therefore, become the owners and would control and manage the system. For that reason it follows necessarily that the water right to the quantity of water remaining after deducting therefrom the water rights granted to the cross-appellants who hold the old form contracts should be issued to the Orchards Water Company for the use of the land described in the new form contracts.

One of the most perplexing problems submitted by this appeal is the description of the land entitled to the use of the water adjudicated to the Willow River Land and Irrigation Company. It is contended on the part of the appellants that they are entitled to the amount of water purchased for the use of the land described in their contract, not to exceed two acre-feet, whether or not that land was actually irrigated prior to January 1, 1918; that because the Irrigation Company and its successors refused to deliver to them the necessary quantity of water to enable them to reclaim and irrigate the land purchased with a water right appurtenant thereto they were unable to apply the water to beneficial use prior to January 1, 1918; that they purchased the land and water rights in good faith, intending to use the water upon the land purchased and wherein they failed to do that was not due to their own conduct, but because of the shortage of water; that the shortage of water resulted from the

Irrigation Company diverting large quantities of the
water sold to them to reclaim its own lands; that none
of the water users was a party to the proceedings
adjudicating the water right to the Irrigation Com-
pany and that none of them had any knowledge of
the limitation requiring actual application of the
water to be made prior to January 1, 1918; that the
Irrigation Company and its successors never at any
time notified any of the water users that the decree
adjudicating the water right to the Willow River
Land and Irrigation Company required the applica-
tion of the water to beneficial use prior to January
1, 1918; that because of failure to supply water
to them by the Irrigation Company and its successors
they were unable to reclaim and irrigate all the land
purchased and for the benefit of which they were
entitled to the two acre-feet, as prescribed in their
contracts. On the other hand, the respondents con-
tended that this proceeding was for the sole purpose
of describing the land which had been irrigated under
the project in accordance with the former decree
herein; that neither the Water Board nor the court
should have entertained or heard evidence upon the
issues framed by the petition of the Orchards Water
Company and the protest and obligation of the appel-
lants, but that an order should simply have issued to
the Water Board directing it to issue the certificate
of water right to the respondent Orchards Water
Company to the land actually irrigated from the sys-
tem prior to January 1, 1918; that the sole issue
to be determined in this proceeding is the description
of the land actually irrigated, and that the former
decree of this court required the Water Board to
issue such certificate upon receiving proof of the
particular land upon which the water had been benefi-
cially applied. The respondents contend in effect

that the appellants are not entitled to be heard; that the court should ignore all complaints about the incomplete condition of the system and the alleged improper distribution of the water thereunder. The respondents assert and seriously contend in effect that the question of fraud in distributing the water, no matter how flagrant, should not be considered nor entertained.

28. If this were a proceeding for determining the relative rights between different appropriators from the same source of supply, the court would not consider the controversy between an appropriator and those claiming under him: *Humboldt L. & C. Co.* v. *District Court*, 47 Nev. 396 (224 Pac. 612). The Water Board did not have jurisdiction to determine the question of fraud nor to pass upon the demurrers filed and presented by the respondents to the Water Superintendent. The Water Superintendent is not a court. The respondents presented a demurrer to the objections and protests of the appellant. A demurrer presents only a question of law. The Water Superintendent, therefore, had no jurisdiction to determine the demurrer presented. His capacity is rather that of a referee appointed for the purpose of taking the testimony and finding the facts and reporting them to the court: *In re Silvies River*, 199 Fed. 501. When the report of the Water Superintendent was filed with the Circuit Court the proceeding then became a suit in equity. The petition of the Orchards Water Company and the various objections and protests thereto constituted the pleadings.

29. By the terms of the new contract under which the appellants, members of the Water Users Association, claim an interest in the land and water right appurtenant thereto, an agreement was made for the sale of a certain parcel of land with a water right

appurtenant thereto, not to exceed two acre-feet per acre. When the Irrigation Company and its successors in interest entered into a contract for the sale of a tract of land with a water right appurtenant thereto it could not thereafter claim to be the owner of the tract of the land described in the contract, as long as the purchaser was in possession of the land and not in default. By the same token the Irrigation Company and its successors could not lawfully claim to be the owner of the quantity of water appurtenant to the land described in that contract. They had no more right to claim the use of the water thus sold or contracted to be sold than they could have claimed the right to the land or the use of the land described in the same contract. It was not lawful, therefore, for the Irrigation Company, or any of its successors in interest, to apply the water adjudicated to the Irrigation Company by the former decree herein to land belonging to it or its successors until after the purchasers under the new form contracts, as well as the old form of contracts, had been supplied with the quantity of water purchased by them. It follows, therefore, necessarily, that the respondents ought not to be heard to say that the purchasers of land and water rights under the new form contracts did not beneficially apply the water to which they were entitled prior to January 1, 1918, when the failure so to do was caused by the Irrigation Company and its successors withholding the water from their purchasers and applying it to their own land. This contention has been determined against the respondents in this court in *Smith* v. *Willis*, 84 Or. 271, 283 (163 Pac. 810), where the court, speaking through Mr. Chief Justice McBRIDE, said:

"It also sufficiently appears that the original grantor and these plaintiffs used water from their

irrigation system to irrigate 800 acres of their own land, and that this occasioned such a shortage they were unable to furnish the water in the agreed quantity to defendants. This they had no right to do. It was their duty to furnish to defendants at any inconvenience that a compliance with their contract might occasion to themselves, and they had no legal right to occasion a shortage by creating an additional use on lands owned by them.''

To the same effect is the case of *Caldwell* v. *Twin Falls, Salmon River Land & Water Company*, 225 Fed. 177 (155 C. C. A. 17); 260 Fed. 270; 267 Fed. 382; 272 Fed. 356; 266 U. S. 85 (69 L. Ed. 85, 45 Sup. Ct. Rep. 22), decided in U. S. Supreme Court, October 27, 1924. Also, *Blakely* v. *Ft. Lyon Canal Co.*, 31 Colo. 224 (73 Pac. 249, 251); *Smith* v. *Willis,* 84 Or. 271, 283 (163 Pac. 810); *Black* v. *Baker,* 126 Wash. 604 (219 Pac. 59); *Imperial Water Co.* v. *Holabird,* 197 Fed. 4, 5 (116 C. C. A. 526); *New La Junta & Lamar Co.* v. *Kreybill,* 17 Colo. App. 26 (67 Pac. 1026); *La Junta & Lamar* v. *Hess,* 6 Colo. App. 496 (42 Pac. 50); *Idaho Irrigation Co., Ltd.,* v. *Dooding et al.,* 265 U. S. 518 (68 L. Ed. 1157, 44 Sup. Ct. Rep. 618).

30. The respondents are confused and confusing in the attitude they take toward each other. The learned counsel for the respondents stated, in the hearing before the Water Superintendent, that the Orchards Water Company was simply acting as a stakeholder. Again he stated, ''The applicant (Orchards Water Company) is willing to admit their liability under all these contracts.'' On another occasion the same learned counsel appearing for all the respondents, said: ''We don't represent any stockholders.'' On another occasion the same learned counsel said: ''The Moline Farms Company and the

Magenheimer land is paid-up stock." It is not possible to reconcile these two statements to the effect that he did not represent any stockholders and that two of his clients in this proceeding held paid-up stock in the Orchards Water Company. There are other expressions in the record clearly indicating that the attitude of the respondents is in effect that the Orchards Water Company stands in the place and stead of the Irrigation Company. This is true only to the extent of maintaining the system and distributing the water. The Irrigation Company never owned the stock of the Orchards Water Company as proprietor. Its successors in interest, the Moline Farms Company and Magenheimer, did not own the stock of the Orchards Water Company as proprietors. The Orchards Water Company stock was held in trust by the Irrigation Company and its successors in interest, including Moline Farms Company and Magenheimer. The Orchards Water Company is an Oregon corporation, organized for the express and sole purpose of holding title to the irrigation system and distributing the water to the persons lawfully entitled thereto. It was not organized for profit. It was not an appropriator of water. The Irrigation Company appropriated the water. The respondents, Moline Farms Company, has succeeded to all the proprietary rights of the Irrigation Company. It took over the contracts with the purchasers from the Irrigation Company, claiming the benefits of those contracts. It is, thereby, obligated to perform the covenants of the Irrigation Company in those contracts: *Childs* v. *Neitzel*, 26 Idaho, 116 (141 Pac. 77, 81, 83); *Imperial Water Co.* v. *Holabird*, 197 Fed. 4 (116 C. C. A. 526); *First Trust & Savings Bank* v. *Bitterroot Valley Irrigation Co.*, 251 Fed. 320. The Moline Farms Com-

pany appears from the evidence to have been absolutely controlled by the respondent, Magenheimer. Until the system was transferred to the Orchards Water Company, Magenheimer also controlled the Orchards Water Company. It seems to be the attitude of the counsel representing the respondents that the interest of the Orchards Water Company, the Moline Farms Company, and Magenheimer are identical. This is not correct. The Orchards Water Company is a trustee for the water users. The Moline Farms Company succeeded to the interest of the Irrigation Company as proprietor.

The witness, Oakes, testified in behalf of the respondents that the members of the Water Users Association had been supplied with all the water requested, up to two acre-feet. This testimony is not only disputed by the water users, but is refuted by the record which clearly shows the inability of the Moline Farms Company to impound and distribute the necessary quantity of water to have beneficially irrigated all of the land under the project to which an attempt was made to apply the water. Notwithstanding this shortage obtained each year the system has been operated, large quantities of water were diverted to irrigate the land of the Irrigation Company and its successors. This could not be done lawfully.

31. The Moline Farms Company had no lawful right to issue stock of the Orchards Water Company except to actual *bona fide* purchasers of land under the project to which the water would become appurtenant: *Caldwell* v. *Twin Falls Salmon River Land & Water Co.*, 225 Fed. 534; *Twin Falls Salmon River Land & Water Co.* v. *Caldwell*, 242 Fed. 177, 191 (155 C. C. A. 17); *First Trust & Savings Bank* v. *Bitterroot Valley Irrigation Co.*, 251 Fed. 320, 323; *Boley* v. *Twin Falls Canal Co.*, 37 Idaho, 318 (217

Pac. 258, 262) ; *Smith* v. *Willis*, 84 Or. 283 (163 Pac. 810) ; *State ex rel. Robt. Rayl* v. *Twin Falls etc. Co.*, 30 Idaho, 41 (166 Pac. 232). It follows that the land owned by the members of the Water Users Association under the project is entitled to the use of sufficient water from Willow River and its tributaries to irrigate the land described in their several contracts with the Irrigation Company or its successors, to the extent of two acre-feet per acre. The land of the purchasers from the Irrigation Company and its successors is entitled to the use of that quantity of water before any water should be applied to the land belonging to the successors in interest as proprietors of the Willow River Land and Irrigation Company.

32. Complaint is made because of the transfer from the Moline Farms Company to the Orchards Water Company of the irrigation system. The original contract between the Irrigation Company and the Orchards Water Company provided for the transfer. This issue is collateral to the issues properly joined herein, and is not considered.

33. The respondents, Moline Farms Company and Magenheimer claim a right to prorate the water with the purchasers from them and the Irrigation Company. The new form contract provides for prorating the water in case of shortage. It is agreed in behalf of respondents that the Irrigation Company and its successors in interest, by the terms of that contract, have the same right to share in the water that their vendees have. This contention cannot be sustained. To accept that contention would enable the Irrigation Company and its successors to sell to purchasers land with the water right of two acre-feet and at the same time withhold the water. That contention would permit the Irrigation Company and its successors to have

sold 15,000 acres of land with a water right of two acre-feet appurtenant thereto when experience has shown that the water supply owned by them was not sufficient to supply two acre-feet to 5,000 acres. In other words, it would authorize the Irrigation Company and its successors to sell what they did not own. The provision in the contract providing for prorating of water was embodied in the contract to cover a shortage of water, which is likely to occur at times by reason of circumstances beyond the control of the Irrigation Company and its successors. The supply of water is variable. It varies every season. The provision for prorating is a reasonable and lawful part of the contract, but it cannot be construed so as to authorize a company to sell water far in excess of its supply. It is only allowable where the shortage occurs occasionally. Experience has shown that under this project the Irrigation Company and its successors have not been able to furnish water to 5,000 acres of land on an average. Any sale of water beyond that quantity was unlawful: *Caldwell* v. *Twin Falls Salmon River Land & Water Co.*, 255 Fed. 584; *Twin Falls Salmon River Land & Water Co.* v. *Caldwell*, 242 Fed. 177, 191 (155 C. C. A. 17); *First Trust & Savings Bank* v. *Bitterroot Valley Irrigation Co.*, 251 Fed. 320, 323; *Boley* v. *Twin Falls Canal Co.*, 37 Ida. 318 (217 Pac. 258, 262). The appellant water users must prorate with themselves in case of a water shortage, after the water rights of the cross-appellants, W. B. Eaton et al. and Emory Cole have been furnished under this project. But the water users are entitled to water in preference to the proprietary successors in interest of the Willow River Land and Irrigation Company. The water users should not be required to prorate water in case of shortage with the Irrigation Company or its proprietary successors

in interest. The Irrigation Company, or its successors in interest, as proprietors, could not lawfully apply the water theretofore sold to the water users at the expense of the latter: *Imperial Water Co.* v. *Holabird,* 197 Fed. 4, 18 (116 C. C. A. 526); *Blakely* v. *Ft. Lyon Canal Co.,* 31 Colo. 224 (73 Pac. 249, 251); *Smith* v. *Willis,* 84 Or. 271, 283 (163 Pac. 810); *Black* v. *Baker,* 126 Wash. 604 (219 Pac. 59); *New La Junta & Lamar Co.* v. *Kreybill,* 17 Colo. App. 26 (67 Pac. 1026); *La Junta & Lamar* v. *Hess,* 6 Colo. App. 497 (42 Pac. 50).

34. We hold that the appellant members of the Water Users Association purchased a definite quantity of water and are entitled to receive that quantity except in case of a shortage caused by means beyond the control of the owner and distributor of the system: *State ex rel. Robt. Rayl* v. *Twin Falls etc. Co.,* 30 Idaho, 41 (166 Pac. 232); *Caldwell* v. *Twin Falls Salmon River Land & Water Co.,* 225 Fed. 584, 591–593; *Twin Falls Salmon River Land & Water Co.* v. *Caldwell,* 242 Fed. 177, 193, 194 (155 C. C. A. 17); *Blakely* v. *Ft. Lyon Canal Co.,* 31 Colo. 224 (73 Pac. 249, 255); *Black* v. *Baker,* 126 Wash. 604 (219 Pac. 59); *Boley* v. *Twin Falls Canal Co.,* 37 Ida. 318 (217 Pac. 258, 262); *State* v. *Twin Falls Land & Water Co.,* 37 Idaho, 73 (217 Pac. 252, 256).

The Orchards Water Company is the holder and owner of the irrigation system at this time. That company was created for the very purpose of owning the system after it had been completed and in operation. The new form contracts between the Irrigation Company and the water users expressly provide that the users should acquire the stock of the Orchards Water Company and would thereby control the manage the company. The water certificate, therefore, should be issued by the State Water Board to the

Orchards Water Company. The holders of old form contracts became not only vendees of the land described in such contracts, but the transferees *pro tanto* of the water rights adjudicated to the Willow River Land and Irrigation Company. The holders of the old form contracts are, therefore, successors in interest to the Irrigation Company to the quantity of water necessary to irrigate the lands owned by them and described in the old form contract necessary to beneficially irrigate that land, not to exceed the sum of three acre-feet per acre. The Orchards Water Company, as the successors in interest to the remaining part of the water right adjudicated to the said Irrigation Company, is entitled to a certificate of its water right for the benefit of the land owned by its stockholders.

Wherein the respondent, Magenheimer, has succeeded to the interests of the purchasers from the Irrigation Company, or its successors, as proprietors, he is entitled to the same rights as other purchasers; provided, he does not hold such land, with its appurtenant water right, for the benefit and use of the Moline Farms Company. The latter successor to the Irrigation Company as proprietor will not be allowed to divert water for use upon its own land until after the land of all the purchasers from the Irrigation Company and its successors as proprietors shall have been supplied with water for all of the land described in their contracts, to the extent of two acre-feet per acre.

35. The purchasers are claiming water not as original appropriators. They are claiming a part of the water adjudicated to the Irrigation Company. The Moline Farms Company has succeeded to that water right. Either the Irrigation Company or its said successor has sold to the water users the quantity of

water defined in their contracts. They are bound by their sales. Until the quantity of water so sold has been delivered to the purchasers the Moline Farms Company has no right to divert to its own land water adjudicated to the Irrigation Company. It is not intended by this decree to permit water to be controlled or owned by any person who does not apply it to a beneficial use. No one will be allowed to claim or take water which he does not apply to a beneficial use, but all of the land claimed by the purchasers, described in their several contracts, is under the water right adjudicated to the Irrigation Company. The purchasers are entitled to the benefit of that water right in accordance with their contracts of purchase. The Irrigation Company and its successor in interest as proprietor will not be allowed to profit by its own wrong in withholding water from its vendees.

36. The right to the public water of the state is not involved. An attempt to apply the water awarded to the Irrigation Company in the former decree of this court has been made. The controversy has arisen by attempting to apply the water to more land than the supply of water will serve. For that reason the public has no concern about the particular tracts of land to which the water right shall become appurtenant. The controversy has resolved itself into the question of the particular tracts of land entitled to the use of the water. The Irrigation Company and its successors have sold the water to the appellants, and will not now be allowed to claim it as their own.

The average delivery of water for the six years beginning with 1913, and ending with 1918, was 5,036.5 acre-feet. The old form contracts, amounting to about 500 acres, provide for three acre-feet and would,

therefore, require 1,500 acre-feet. The new form contracts owned by the members of the Water Users Association cover in the aggregate 1,312.5 acres, providing for two acre-feet per acre, requiring in the aggregate 2,625 acre-feet. Accepting as we do the average delivery of water for six years as the quantity capable of delivery from the system, there remains 911.5 acre-feet after supplying both the old form and the new form contracts. We are not certain that we can determine the description of the land to which the 911.5 acre-feet should become appurtenant.

37. The capital stock of the Orchards Water Company should be reduced so that the entire capital stock outstanding will be sufficient to represent one share for each acre of the land herein awarded a water right, and no more.

Paragraphs 1, 2, 3 and 5 of the decree of the Circuit Court appealed from are hereby affirmed. The other paragraphs of said decree are modified to agree with this opinion. The cause is remanded with directions to enter a decree in accordance with this opinion.

Mr. Justice BELT, not having heard the argument, took no part in this decision.

———

Former order modified June 16, 1926.

ON PETITION FOR EXTENSION OF TIME TO FILE
PETITION FOR REHEARING.

(236 Pac. 763.)

For appellant, Messrs. Nichols, Hallock & Donald.

For cross-appellant, Emory Cole, Mr. C. M. Crandall.

For respondent, Orchards Water Company, *Messrs. Davis & Lytle, Messrs. Cake & Cake* and *Mr. L. A. Liljeqvist.*

For respondents Moline Farms Company and G. J. Magenheimer, *Mr. George E. Davis.*

PER CURIAM.—Upon an *ex parte* application an order was granted to extend for thirty days the time for presenting a petition for rehearing. The appellant, Willow River Water Users' Association, has strenuously objected to the extension of time because the irrigation season is well advanced and the rights of the parties to the litigation should be determined as early as possible. The rules of the court require all such petitions to be served and an opportunity given to be heard before any order shall be made extending the time. Time for filing of petitions for rehearing expired on June 15, 1925. Inasmuch as the order was made extending the time for thirty days, and the respondents and cross-appellants have probably relied thereon, it would be harsh now to rescind the order absolutely. We believe it unfair to the appellants, however, to extend the time thirty days. The order heretofore made extending the time thirty days for filing a petition for rehearing is, therefore, modified, and the respondents and cross-appellants are given until June 25, 1925, in which to present their petitions for rehearing.

FORMER ORDER MODIFIED.

Rehearing denied July 14, 1925.

ON PETITION FOR REHEARING.

(237 Pac. 682.)

For appellant, *Messrs. Nichols, Hallock & Donald.*

For Emory Cole, cross-appellant, *Mr. C. M. Crandall.*

For W. B. Eaton et al., cross-appellants, *Mr. P. J. Gallagher.*

For respondents, Moline Water Company and C. J. Magenheimer, *Mr. George E. Davis.*

For respondent, Orchards Water Company, *Messrs. Davis & Lytle, Cake & Cake,* and *Mr. L. A. Liljeqvist.*

COSHOW, J.—38, 39. The respondents have addressed a very respectful and urgent petition for rehearing. This has had our serious consideration and we are constrained to adhere to our former opinion. The principal contention in the petition is based upon the claim that this court and the Circuit Court were without jurisdiction to determine the controversy between the appellants and the respondents. This matter was thoroughly considered in our former opinion. It matters not whether the proceeding was instituted before the Water Board, as was done in the instant case, or whether it was initiated by a suit in equity directly in the Circuit Court, as was done in the Hood River case, 114 Or. 112 (227 Pac. 1065). All the matters involved within the issues tendered by the pleadings should be determined. Equity, hav-

ing acquired jurisdiction, should dispose of the entire matter in the one proceeding where that is possible: Section 5754, Oregon Laws. The precise question presented in this appeal was a description of the land to which water should be made appurtenant. We could not rightfully escape determining that question if we were so inclined. The respondents, in their original brief, make this statement:

"The determination under the original adjudication was complete as to the appropriation involved in the present proceedings, except as to the application of the waters to a beneficial use upon the lands described in the decree of the Circuit Court."

In the decree referred to in that statement about 15,000 acres of land were involved. In the present stage of the case only about 4,500 acres are involved. According to the showing made by the respondents we could not determine the issues presented by the application of the respondents and the contests and protests of the appellants without describing the land entitled to the water right issued to the Willow Land & Irrigation Company.

The argument on behalf of the respondents to the effect that an appeal did not enlarge the jurisdiction of the appellant court over the court from which the appeal was taken is not. applicable. Respondents contend that no appeal has been taken. Our former opinion holds that this is a continuation of the original proceeding, instituted to determine the relative water rights of the Willow River and its tributaries. In their petition for a rehearing the respondents take exception to this holding. But in their original brief we find this sentence:

"The proceedings instituted under the present petition are supplemental to those in the original adjudication."

40. Respondents also claim in their petition for rehearing that the necessary parties to a final determination of the rights to the waters secured under the appropriation are not before the court. It is intimated that rights have been acquired from the Moline Farms Company, the proprietary successor to the Willow River Land & Irrigation Company, which are violated in this proceeding. The record does not disclose that any parties other than those represented in this proceeding have an interest in the result. It is axiomatic that any parties not before the court are not bound by the determination unless they are privy to parties who are represented. Provision is made in the Code for rehearing upon a proper showing: Sections 5749, 5750 and 5751, Oregon Laws.

41. If the parties who claim not to have been represented are privy to the parties to the proceeding, they are bound by the determination. Respondents contend that the appellants were bound by the original determination of the relative water rights reported in 74 Or. 592 (144 Pac. 505, 146 Pac. 475), because they are privy to the parties in that proceeding. We quote again from the petition for rehearing:

"These proceedings were initiated before the organization of the Orchards Water Company or the sale of the land under contracts. Hence, all parties claiming an interest in this appropriation were privy to the proceedings and bound by them."

By the same token the parties referred to in respondents' petition for rehearing as having an interest, and not having been represented, would be bound.

42. Neither the Willow River Land & Irrigation Company or any of its proprietary successors could lawfully make appurtenant to its own land water that had been theretofore by it sold to the appellants. No one can sell property to another and at the same time retain that property. For that reason the Moline Farms Company could not lawfully make appurtenant to its own land the water adjudicated to it or its predecessor in interest and by them or either of them sold to another.

There was no intention to disturb vested rights as adjudicated in the original hearing in this court and reported in 74 Or. 592 (144 Pac. 505, 146 Pac. 475). In considering this appeal only the inchoate rights adjudicated to the Willow River Land & Irrigation Company were considered. We have considered the case of *Sayre* v. *Johnson,* 33 Mont. 15 (81 Pac. 389), and do not consider that it is applicable to the present case. It is true that more than the average amount, as determined in our former opinion, apparently was stored in Reservoir No. 3. It is also true that in giving the measurements upon which the amount so stored was based the witness did not take into consideration, so far as we could determine from the record, the amount of the water so stored which belonged to the vested rights on Willow River or its tributaries. From the evidence, which we carefully read and considered, we made a liberal allowance in the amount of water available under the system. We believe that the amount stated by our former opinion is all and probably more water than can be had from the source of supply lawfully.

43, 44. The cross-appellant, Emory Cole, has also petitioned for a rehearing, contending that he is entitled to the 4.2 acre-feet of water because he has a

contract for that amount.   He overlooks the principle
that no one can lawfully appropriate more water than
he can beneficially use economically applied.   That
principle is incorporated in the law of the state: Sec-
tions 5716 and 5717, subdivision 2, Oregon Laws.   The
Willow River Land & Irrigation Company could not
appropriate more than the amount heretofore deter-
mined to be necessary for the irrigation of the land
awarded a water right, which is three-acre feet.   It
follows conclusively, therefore, that the Willow River
Land & Irrigation Company could not lawfully con-
tract to deliver to the cross-appellant, Emory Cole, to
exceed three-acre feet of water.   A contract in viola-
tion of positive legislation is not enforceable: 13
C. J. 255, § 26.

Our former opinion is adhered to.

REHEARING DENIED.

TAXATION OF COSTS AND DISBURSEMENTS.

PER CURIAM.—45. The appellants have filed a
cost bill for their costs and disbursements in this
court.   The respondents have filed objections to the
cost bill, but not to any particular item or items
thereof.   The cross-appellant, Emory Cole, has also
filed a cost bill, to which both the appellants and re-
spondents have filed objections.   As a rule the costs
follow the event of the case: Section 567, Oregon
Laws.

46, 47. In equity the court has discretion with re-
gard to costs.   We are of the opinion that costs and
disbursements should be awarded the appellants,
Water Users Association, against the respondents,
G. J. Magenheimer and Moline Farms Company.
Their conduct in the control and management of the
Orchards Water Company, both before and after the

system was transferred to the Orchards Water Company, is the primary cause of the litigation. We believe it both equitable and just that they should bear the expenses of the litigation within the statute.

We are of the opinion that the cross-appellant, Emory Cole, is not entitled to recover either costs or disbursements against any of the parties to the suit. The cost bill of the appellants will be allowed in favor of the appellants against the respondents G. J. Magenheimer and Moline Farms Company. The cost bill of the cross-appellant, Emory Cole, will be disallowed.                                    COSTS TAXED.

---

Motion to recall mandate denied and decree amended September 15, 1925.

### ON MOTION TO RECALL MANDATE.

#### (239 Pac. 123.)

For the motion, *Messrs. Nichols, Hallock & Donald.*

For Emory Cole, cross-appellant, *Mr. C. M. Crandall.*

For W. B. Eaton et al., *Mr. P. J. Gallagher.*

*Contra, Messrs. Davis & Lytle* and *Messrs. Cake & Cake* and *Mr. L. A. Liljeqvist.*

COSHOW, J.—36. This matter has come on again upon a petition of the appellants, the Water Users Association, for an order to recall the mandate and amend the decree by incorporating therein the specific description of the land entitled to the use of water from the irrigation system. The petition is resisted by the respondents for the reason that there are a number of tracts of land entitled to the use of

water, the holders of which were not parties to the proceeding heard on appeal.

This court could probably incorporate a particular description of the several tracts of land to which water is made appurtenant by its decree under both the old and new form contracts. It cannot determine the specific tracts of land entitled to the excess, if any. For that reason we believed it to be to the interest of all concerned to remand the case to the Circuit Court with directions to enter the decree. We are still of that opinion. The decree of this court has determined the rights of the parties. Since this court cannot accurately describe all of the land entitled to water we believe it is better not to undertake to describe any. The attorneys for the respective parties should assist the Circuit Court to formulate a decree in accordance with our opinions and decree.

If the several parties and their attorneys would manifest the same spirit to assist the court in arriving at an accurate description as has the attorney for Emory Cole, it would be no trouble to the Circuit Court to formulate a decree accurately describing all of the land.

It was not the intention of this court to incorporate in its decree an accurate description of the land entitled to the 3 acre-feet of water per acre under the old form contracts, the description of the land entitled to the 2 acre-feet of water under the new form contracts, or the surplus, if any. The intention was to fix definitely the quantity of water which should be awarded to the Orchards Water Company. The division of the water to the several tracts of land entitled thereto was intended as approximate only. This appears by the use of the word "about" and the fact

that the quantity of water available is a variable quantity, which was fixed in the decree by averaging up the quantity available for six years.

The principal questions of law decided were:

First, the quantity of water available for appropriation. That was fixed definitely.

Second, that the holders of the old form contracts, providing for approximately 4.2 acre-feet of water, are entitled to 3 acre-feet only.

Third, that the successors in interest, as proprietors of the Willow River Land and Irrigation Company are not entitled to prorate with the holders of the new form contracts, providing for two 2 acre-feet of water per acre, in case of a shortage of water.

Fourth, that appellants who are holders of new form contracts are entitled to an award of that quantity of water regardless of whether or not they had applied the water to a beneficial use on or before January 1, 1918, because their vendor had withheld the water from them thus preventing them from applying the water to a beneficial use.

The former decree of this court is amended for the purpose of clarifying the award of water to the different tracts of land entitled to the use thereof. As amended, we believe the Circuit Court will have no trouble, if given the proper assistance by the counsel representing the different parties interested, in definitely describing all tracts of land entitled to the use of the water available from Willow Creek and its tributaries.

The petition to recall and incorporate in the decree the specific description of the land entitled to the use of water is denied.

DECREE AMENDED.    PETITION DENIED.